[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 352 
None of the exceptions which the defendants take to the complaint appear to me to be well founded.
1. It is argued that the contract, the assignment of which is the consideration of the defendants' covenant, is void on its face for want of conformity to certain express provisions of the statute respecting the letting of such contracts. The contract, as referred to in a general way in the agreement between the present parties, is said to be for the services of from fifty to one hundred convicts. It is insisted that, to be valid, it should be for a precise number. Then the period during which the contractors were to be entitled to the labor of the convicts was three years, with the privilege of extending the same to five years; and this is said to be illegal, the statute, as it is argued, requiring such contracts to be for a definite and certain time. As the contract with the agent is not set out, and its contents are only referred to briefly for the purpose of identification, we do not know upon what circumstance it was to depend, whether the number of convicts employed should be fifty or one hundred and fifty, nor with certainty at whose option it was that the time should be enlarged to five years; though as to the last it seems probable that the employer of the convicts was to have the right to determine that point. As the defendants, who have the onus of showing the contract to be void, have not given us its language, if, upon any reasonable assumption as to the bearing of those portions of it which are not given, it would be consistent with law, we are not to declare it void for a supposed want of conformity to it. The number of convicts of all kinds, and of course the number of those suitable to be employed in making saws and files must necessarily *Page 353 
fluctuate considerably, though probably a tolerably approximate estimate could generally be made. It would therefore be quite reasonable to suppose that the agent would be safe in binding himself to furnish to the contractor a certain limited number, less than the whole number which he would probably have, and to agree to furnish, within prescribed limits, so many more as there might be on hand. Then, as to the duration of the contract, parties might be willing to embark in a given business, to be carried on in the prison for a certain number of years, and might desire the privilege of enlarging the period, if the business should be found advantageous. Prima facie, there would be nothing illegal or wrong in contracts containing such provisions; and it remains to inquire whether they are prohibited by statute. The provision on which the defendants rely is contained in the 9th section of the act in relation to the state prisons, passed in 1835 (ch. 302), and in the statute of 1847 (p. 615, § 77). It declares that notice by advertisement shall be given of the time and place of letting every contract for the labor of convicts, which notice, it is said, "shall specify the particular branch of business in which the convicts are to be employed, the length oftime for which their services are to be let, not exceeding fiveyears, and the number of convicts to which the contracts are tobe limited; and in all those branches of business of which the consumption of the country is chiefly supplied without foreign importation, the number of convicts to be employed or let shall be limited by the number of convicts who had learned a trade before coming to prison." There is no averment that there was any defect in the notice, but the argument is that the direction as to its terms indicates what particulars are required to enter into the contracts, so far as the subjects of time and of number are concerned. The object of the notice is to secure competition among parties desirous of contracting, in order to enable the State to obtain a fair price, and to prevent favoritism. To enable bidders to make their proposals, it is essential that the substance of the contract should be made known, and one of the most material of the terms which are to enter into it doubtless is the number *Page 354 
of the hands to be employed. An advertisement that the agent would let the services of fifty convicts certain, and as many more within a definite limit as there should be in the prison, suitable to be employed at the particular business, would be sufficiently definite for the purposes referred to; and it would in my judgment comply with the terms of the statute. That does not prescribe that the number to be ultimately embraced in the contract should be exactly stated in the advertisement, it only requires a statement of the number of convicts to which the contracts are to be limited. That language seems to be used in contemplation of the peculiarity of the circumstances regulating the supply. It prescribes that the maximum and perhaps the minimum should be named. There is no reason to doubt, and certainly no authority to deny, that the limits in both respects were stated in the advertisements in the same manner as in the contract. I think this was the proper way to transact the business and that it did not violate any law.
This contract bound both parties to a definite period of time for the service of the convicts, namely three, years; and this satisfied the terms of the statute, if we shall construe it as requiring that the period of employment should be stated in the agreement. There was a privilege given to the contractors to enlarge this time. Doubtless they were to signify their determination in some way to the agent. We cannot assume, for the purpose of sustaining the demurrer, that the advertisement concealed or failed to state that this provision, as to the enlargment of the time, was to be one of the terms of the contract. Supposing adequate notice to have been given to the bidders, the insertion of such a provision in the proposals would not interfere with the opportunities for competition. I am unable therefore to see that there was anything unlawful in that part of the contract which was contingent upon the contractors electing to enlarge the period to five years. This did not exceed the time which the policy of the legislature had prescribed for the extreme duration of such contracts. But if the contract was void for all beyond three years, it was valid to that extent. The provision, looking to the additional *Page 355 
period, was simply void as being in excess of the authority of the agent, but it did not vitiate the sound part of the contract.
2. The defendants maintain that the contract was not in its nature assignable. Hence, their counsel argue that no interest passed by the assignment to the defendants, and that, consequently, their covenant to pay an equivalent for such assignment is shown to be a nudum pactum, which is not now obligatory though under seal. This argument is based upon the assumption that the contractor was clothed with a fiduciary or aquasi official character, which was conferred upon him from motives relating to his personal fitness; in other words that by receiving the contract he was entrusted with a participation in the discipline of the prison. If this were so, the consequence would probably follow that the trust would not be assignable. But an examination of the statute will show that the position is based upon a misconception of its meaning. There is no power conferred upon a contractor or his foreman or servants to interfere in any way in the discipline of the prison; nor is there any requirement obliging the person contracting for the labor of convicts, to attend personally at the prison or to have any individual agency in the superintending the performance of the labor. Doubtless he must have persons acting on his behalf to take a supervision of the work, and to perform the duties in that respect usually entrusted to a foreman in any other workshop. But the statute clearly contemplates that the convicts, while laboring under contracts, as well as at all other times, shall be under the charge of a keeper or keepers (Laws of 1847, p. 610, § 58); and the discipline is at all times under the general supervision of the warden (id., p. 607, § 53). It is no doubt the right and the duty of the immediate officers of the prison to see that the persons admitted into the shops, on behalf of contractors, shall conduct themselves suitably and interpose no impediments to the maintenance of order and obedience on the part of the convicts; and they may expel and prohibit the return of any one who shall offend in these particulars. The contracts are to be let, as has been mentioned, after notice given by advertisement; and *Page 356 
there is no provision which suggests that there is to be any scrutiny exercised as to the character, habits, understanding or temper of parties proposing to contract. Should a person to whom a contract was awarded be personally unfit for the duty of superintending the labor of the convicts, he could be excluded as readily as a person employed by him; and he would then be obliged to engage a suitable person to superintend the work. The discipline of the prison cannot be subordinated to the convenience of the contractor. These considerations have led me to the confident opinion that the position of a contractor for convict labor is not one of public confidence or duty, and that the contractors are not designated upon any considerations of personal fitness for the management of prisoners. The agent I am satisfied is to award the contracts to the parties who will pay the highest price for the labor, and at the same time give adequate security for the performance of their part of the agreement. I know of no principle forbidding the transfer of the equitable interest in a contract of that character. The original parties remain of course responsible to the agent or to the State, notwithstanding the assignment, but the profit and advantage of the contract belongs to the assignees, they performing, as they have agreed to do, the engagement towards the State which the original contractors took upon themselves.
I think the demurrer was properly overruled, and that the judgment should be affirmed.
All the judges concurring,
Judgment affirmed. *Page 357