## STATE EX REL. ARKANSAS INDUSTRIAL CO. V. NEEL AND OTHERS.

1. **HABEAS CORPUS:** *Jurisdiction of Supreme Court.*

   The Supreme Court has jurisdiction to review the proceedings of inferior courts, and also of chancellors and circuit judges at chambers, upon applications for *habeas corpus.*

2. **SAME:** *Is not for correction of errors.*

   The writ of *habeas corpus* cannot be converted into a writ of error. Its object is to set free from unlawful custody; to require the custodian to show his authority for the imprisonment or detention—if by virtue of proces, nothing will be inquired into under the writ of *habeas corpus* but the validity of the process upon its face, and the jurisdiction of the court which issued it.

3. **SAME:** *Object and purposes of the writ.*

   The general object and purpose of the writ of *habeas corpus* is to restore to liberty one who is unjustly held in custody and restrained of his liberty; but it may be also awarded to transfer a party unlawfully in custody of another to the custody of the party lawfully entitled to it.

4. **SAME:** *To reclaim convicts from unlawful custody.*

   All the duties required by law to convicts in the penitentiary, are to be performed by the lessee of the penitentiary, and he cannot surrender their custody and control by hiring them out to another person; and where they have been hired out by a previous lessee, his successor may reclaim their custody and control by *habeas corpus.*

CERTIORARI to *Pulaski* Chancery Court.
Hon. D. W. CARROLL, Chancellor.

*Caruth & Erb* and *U. M. & G. B. Rose*, for petitioner.

Counsel beg leave to refer to the following cases : *Goode et al., ex. parte, 19 Ark., 410 ; Ruffen's Case, 21 Grattan, 790; secs. 4884 and 4890, Mansf. Dig.; Milligan v. Children's Home, 97 Ind., 355 ; Rober's case, 15 Ark.; Kittrel, ex parte, 20 Ark., 504.*

*Thomas B. Martin, Met L. Jones* and *M. L. Bell*, for respondents.

The writ of *habeas corpus* cannot be used for the purpose attempted in this cause, to settle property rights. While the writ is, ordinarily, one of right, it is not a writ that must be issued of course. *Church on Habeas Corpus, 94.*

Petitioners remedy is by appeal. *37 Ark., 318 ; 25 ib., 518 ; 29 ib., 173.*

BATTLE, J. On the 16th of January, 1887, the Arkansas Industrial Company presented a petition to this court, alleging therein, among other things, that on the 10th day of January, 1887, it presented to the Pulaski chancery court its petition, in which it set forth and showed the following facts : That in 1883 the state of Arkansas, for a valuable consideration, made and executed to Townsend & Fitzpatrick a lease of the state penitentiary, together with the custody, use and control of all the convicts therein confined, for a period of ten years. That, for a valuable consideration Townsend & Fitzpatrick subsequently transferred and assigned this lease to relator, and that thereby it became the lessee of the state penitentiary.

That prior to this assignment, on the 22d day of January, 1883, Townsend & Fitzpatrick hired to the defendant, C. M. Neel, for ten years, one hundred of the convicts confined in the state penitentiary, at twelve dollars and fifty cents *per capita* per month. That this contract with Neel was assigned to it at the time the lease was transferred. That under this contract the defendants unlawfully hold in their possession and control, and detain ninety-five convicts, named in the petition, who are duly and lawfully sentenced to confinement in the state penitentiary, by courts of competent jurisdiction of the state of Arkansas. That relator is entitled to the custody of these convicts by virtue of its being the lessee of the penitentiary. That relator had demanded the custody and possession of these convicts, and defendants had refused to surrender them; and that it asked the chancery court in that petition for a writ of *habeas corpus*, directing the defendants to produce the bodies of these convicts, and that they be delivered to relator.

And relator further states in its petition to this court, that defendant filed a response to its petition in the Pulaski chancery court, and that the chancery court, upon a hearing, refused to issue a writ of *habeas corpus*, and dismissed its petition.

The prayer of the petition filed here is, that the proceedings of the chancery court be reviewed by this court, and that a writ of *habeas corpus* be issued as prayed for in its first petition, and that the convicts named in its petition be delivered to it, and for general relief.

In response to a writ of *certiorari* the record and proceedings of the chancery court have been certified to this court, from which it appears that the allegation of relator in both petitions, so far as they are stated in this opinion,

are true. They are not denied by the defendants. Both parties appear in this court.

Section 4 of article 7 of the constitution of this state, reads as follows: "The Supreme Court, except in cases other-wise provided by this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, under such restrictions as may from time to time be prescribed by law. It shall have a general superintending control over all inferior courts of law and equity; and, in aid of its appellate and supervisory jurisdiction, it shall have power to issue writs of error, and supersedeas, *certiorari*, *habeas corpns*, prohibition, *mandamus* and *quo warranto*, and other remedial writs, and to hear and determine the same."

The jurisdiction of the Supreme Court of the United States is similar to that of this court. After saying to what cases and controversies the judical power of the United States shall be limited, the constitution of the United States defines the jurisdiction of the Supreme Court as follows: "In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the congress shall make."

In defining the jurisdiction of the district, circuit and supreme courts of the United States congress, by an act of September 24, 1789, enacted, "that all the before-mentioned courts shall have power to issue writs of *scire facias*, *habeas corpus*, and all other writs not especially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law, and that either of the justices

of the supreme court, as well as judges of the district courts, shall have power to grant writs of *habeas corpus*, for the purpose of inquiry into the cause of commitment: provided, that writs of *habeas corpus* shall in no case extend to prisoners in jail, unless they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify."

Under the constitution of the United States, and this act of congress, the Supreme Court of the United States has, in numerous cases, held that it can, in the exercise of its appellate jurisdiction, issue the writ of *habeas corpus*, and hear and determine the same.

In *ex parte Yerger, 8 Wall., 85*, Chief Justice Chase, after an exhaustive review of the decisions upon that subject, announced the conclusion of the court as follows: "We are obliged to hold, therefore, that in all cases where a circuit court of the United States has, in the exercise of its original jurisdiction, caused a prisoner to be brought before it, and has, after inquiring into the cause of the detention, remanded him to the custody from which he was taken, this court, in the exercise of its appellate jurisdiction, may, by the writ of *habeas corpus*, aided by the writ of *certiorari*, revise the decision of the circuit court, and if it be found unwarranted by law, release the prisoner from the unlawful restraint to which he has been remanded."

In commenting upon this jurisdiction, in *ex parte Siebold, 100 U. S., 374*, the Supreme Court of the United States said: "The question is, whether a party imprisoned under a sentence of a United States court, upon conviction of a crime created by and indictable under an unconstitutional act of congress, may be discharged from imprisonment by this court on *habeas corpus*, although it has no appellate jurisdiction by writ of error over the judgment. It is

State ex rel. Arkansas Industrial Co. v. Neel and Others.

objected that the case is one of original and not appellate jurisdiction, and, therefore, not within the jurisdiction of this court. But we are clearly of the opinion that it is appellate in its character. It requires us to revise the act of the circuit court in making the warrants of commitment upon the conviction referred to. This, according to all the decisions, is an exercise of appellate power. *Ex parte Burford, 3 Cranch., 448; ex parte Boleman, and Swortout, 4 ib, 100, 101; ex parte Yerger, 8 Wall., 98.*

"That this court is authorized to exercise appellate jurisdiction by *habeas corpus* directly, is a position sustained by abundant authority. It has general power to issue the writ, subject to the constitutional limitations of its jurisdiction, which are, that it can only exercise original jurisdiction in cases affecting ambassadors, public ministers and consuls, and in cases in which a state is a party ; but has appellate jurisdiction in all other cases of federal cognizance, with such exceptions and under such regulations as congress shall make. Having this general power to issue the writ, the court may issue it in the exercise of original jurisdiction where it has original jurisdiction ; and may issue it in the exercise of appellate jurisdiction where it has such jurisdiction, which is in all cases not prohibited by law, except those in which it has original jurisdiction only. *Ex parte Boleman and Swortout, supra.; ex parte Watkins, 3 Pet., 202; ib., 568; ex parte Wells, 18 How., 307, 328; Ableman v. Booth, 21 ib., 506; ex parte Yerger, 8 Wall, 85.*"

1. HABEAS CORPUS: Jurisdiction of Supreme Court. The appellate jurisdiction exercised by the Supreme Court of the United States in the issue of writs of *habeas corpus* has been expressly conferred upon this court by the constitution of this state. It is not, however, confined to a review of the action of a court, as in the case of the Supreme Court of the United States, but it extends to a

review of the proceedings of chancellors and judges at chambers upon applications for *habeas corpus* and *certiorari*, and upon proper transcripts of the proceedings. *Ex parte Jackson, 45 Ark., 158.* In both courts this jurisdiction is brought into exercise by the aid of the writ of *certiorari*, it being issued in connection with the writ of *habeas corpus* in order to bring up the proceedings of the lower court or judge, and thereby enable the court to review, revise and correct the action of the inferior court or judge.

It is, however, to be borne in mind that the right to issue a writ of *habeas corpus* in the exercise of its appellate and supervisory jurisdiction does not authorize the court to convert it into a writ of error. The great object of the writ is the liberation of those who may be imprisoned without sufficient cause, and to deliver them from unlawful custody. It is not the function of this writ to inquire into or correct errors. But its object is to require the person who answers it to show upon what authority he detains the prisoner. If the person restrained of his liberty is in custody under process, nothing will be inquired into, by virtue of the writ, beyond the validity of the process upon its face, and the jurisdiction of the court by which it was issued. If he be detained under a conviction and sentence by a court having jurisdiction of the cause, no relief can be given by *habeas corpus*, the general rule being that a conviction and sentence by a court of competent jurisdiction is lawful cause of imprisonment. *Ex parte Siebold, 100 U. S., 375; ex parte Yarbrough, 110 U. S., 651.*

2. SAME: Is not for correction of errors.

The object of the writ of *habeas corpus*, as a general rule, is not to recover possession of the persons unlawfully detained in custody, but simply to free them from all illegal restraints upon their liberty. But this rule is not

3. SAME: Object of the writ.

19–48

without its exceptions. It has been frequently held that the detention of a child of tender years from the one entitled to his custody amounts to illegal restraint, and that in a proceeding by *habeas corpus*, if he is not of sufficient age to determine for himself, the court or judge hearing the application must decide for him, and make an order for his being placed in the proper custody. Not being competent to govern and direct his own actions, he is not permitted to decide for himself what they shall be. *The King v. Johnson, 2 Raymond, 1333 ; Rex v. Delorai, 3 Bur., 1436 ; Verser v. Ford, 37 Ark., 27 ; The People v. Kling, 6 Barb., 366 ; The State ex rel. Sharpe v. Banks, 25 Ind., 495 ; Church on Habeas Corpus, sec. 439.*

*Milligan v State, 97 Ind., 355,* was an application by a foreign corporation. The Children's Home of Cincinnati, Ohio, applied to a court of the state of Indiana for a writ of *habeas corpus*. The object of the application was to obtain possession of a minor. The facts in that case were as follows : The Children's Home of Cincinnati was a corporation organized under the laws of the state of Ohio, and as such had the lawful charge and custody of an infant, and had authority to procure for her a permanent home in a christian family. By a written agreement executed at the city of Cincinnati, in the state of Ohio, the Home transferred the care, custody and education of the infant to the defendant. It was provided in the statutes of Ohio, under which the home was incorporated, that its trustees and managers might remove a child from a home when in their judgment the same had become an unsuitable one; and that they should, in such case, resume the same power and authority they originally possessed. In the judgment of the trustees and managers of the Children's Home, the defendant's home had become and was an unsuitable one for the child, and he was not a proper person to have the

custody and management of such child, and the Home demanded of the defendant the surrender to it of the custody and control of the child, which was refused. The court held upon this state of facts, that the Children's Home had the right to remove the child from the home of the defendant, and to resume its original power and authority over such child, and decreed accordingly.

From the cases referred to it is clear that while the writ of *habeas corpus* is eminently the writ of liberty, and its office is to inquire into the ground upon which any person is restrained of his liberty, and, when it is found that the restraint is illegal, to deliver him from such illegal restraint, courts may in some cases of *habeas corpus* award the custody of such person to whom it may belong; While the great object of the writ is to restore the person unlawfully restrained to liberty, and that end is ordinarily attained by allowing the party improperly detained the free exercise of his volition, it will not restore him, in all cases, to a liberty to which he is not entitled and is incompetent to exercise. It would be contrary to reason to say that when a person shall be relieved by this writ of illegal restraints he should be allowed the free exercise of his own volition, when the law positively demands and commands he shall be held in custody.

The next question is, are the convicts named in the petition filed in this case in unlawful custody? It appears they are held under a contract made by Townsend & Fitzpatrick, former lessees and keepers of the state penitentiary, and the defendant, C. M. Neel, by which Townsend & Fitzpatrick hired them as so many chattels, and surrendered their care and custody to Neel. Had they authority to do so?

The statutes of this state, under which Townsend & Fitzpatrick leased the state penitentiary, make it the duty

4. SAME: To reclaim convicts from unlawful custody.

of the lessee to provide the convicts with clothing, and with good and wholesome food ; to treat them humanely ; to preserve discipline among them by the enforcement of such rules as shall be prescribed by the penitentiary board of commissioners ; and make it the duty of the board to appoint a physician of the penitentiary, whose duty it is to visit the convicts daily, and see that they are not inhumanly punished ; that they are properly clothed ; that they are sufficiently supplied with bed clothing ; that they are not overworked ; that they are sufficiently fed on good, healthy and sound food ; that they are not worked when their state of health forbids ; that their cells are properly warmed and ventilated ; that they are, in all things, whether within or without the walls, humanely treated ; and to make a quarterly report to the board of commissioners ; and make it the duty of the board, on receiving notice from the physician, or otherwise, that the lessee is inhumanely treating the convicts or not faithfully performing his duty as lessee, to notify the lessee ; and on his failure or refusal to comply with the terms of his lease, or to treat the convicts humanely, to take such steps as may be warranted by law. These statutes impose all the duties to convicts upon the lessee. If he fails to perform them he suffers the penalty. No provision is made for the hiring of convicts by the lessee to other persons, and what their duties shall be and the penalty of their failure to perform them. All the duties to the convicts are to be performed by the lessee, and are such as necessarily preclude any idea that he can surrender the control and custody of the convicts to any other person. The requirements of the statutes are such as he only can perform by keeping the convicts in his custody. And to prevent any question in this respect the statutes expressly say he " shall receive and receipt in duplicate for any person who shall be con-

victed by any federal or state court in this state and sentenced to confinement in said penitentiary, and *shall keep* any such person according to sentence until the expiration of the term thereof, unless sooner discharged by due course of law." *Mansf. Dig., secs. 4881, 4884, 4890.*

The relator is conceded to be the lessee and keeper of the state penitentiary. As such it is entitled to the exclusive custody of the state convicts. The convicts in question are unlawfully detained and held in custody by the defendants. This being true, it becomes the duty of this court to relieve them of this unlawful restraint, and award their custody to the relator. And it is so ordered.