T. C. HALL AND W. R. BIGHAM, *Plaintiffs in Error* v. O'NEIL TURPENTINE COMPANY, A CORPORATION, *Defendant in Error*.

1. Courts can take judicial notice of all questions relating to public policy, inform themselves from any accessible sources of facts bearing on the same and apply the principle that a contract is not void as against public policy unless it is injurious to the interests of the public, or contravenes some established interest of society. It is the province of a court to expound the law only, and not to speculate upon what is best in its opinion for the advantage of the community.

2. The statute laws of this state do not indicate a public policy with reference to the sub-hiring of convicts, and give the Board of State Institutions and County Commissioners a very extensive discretion in all matters relating to the hiring of convicts, under which system the practice of sub-hiring has prevailed for several years, without objection, if not with their express assent, under conditions which seem to most amply provide for the humane treatment and care of convicts. This practice has been well known to the legislature, and it has not seen fit to prevent it by legislation, or to enounce a public policy on the subject, variant from that which prevails. Under such circumstances, and where the contract and sub-contract omit nothing essential to the humane treatment of the convicts, and where the hirer, by sub-letting, does not undertake to exempt himself from the responsibility assumed in his contract, and

where the sub-hirer binds himself to observe in all respects the terms of the original contract we cannot say that such a sub-hiring contract is void as against public policy.
PARKHILL, J., dissenting.

3. A demurrer is not the proper method of treating a single feature of a declaration. A motion to reform or to strike, or objections to testimony in support of the objectionable feature, or a charge by the court to the jury in regard thereto, affords the appropriate remedy.

This case was decided by the Court En Banc.

Writ of Error to the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the court.

*Glen & Himes,* for plaintiffs in error.

*Sparkman & Carter,* for defendant in error.

HOCKER, J.—The plaintiffs, T. C. Hall and W. R. Bigham, sued the defendant, the O'Neil Turpentine Company, in the Circuit Court of Hillsborough County. A final judgment was entered in favor of the defendants on a demurrer to the declaration and the plaintiffs are here on writ of error. In February, 1908, the plaintiffs filed their declaration. It is as follows: "That heretofore to-wit on the 3rd day of January, A. D. 1907, the County of Hillsborough by and through its Board of County Commissioners made and entered into a certain contract in writing with the plaintiffs whereby the plaintiffs were given the use and control of the labor and services of all prisoners whether male or female,

under sentence, or to be sentenced to imprisonment in the county jail of Hillsborough County, Florida, for a term of thirty days or more for a period of two years, commencing on the 3rd day of January, A. D. 1907, and ending on the 3rd day of January, A. D. 1909, all of which will more fully appear by reference to a true copy of the contract hereto annexed, marked Exhibit "A," and hereby made by reference a part of this count as fully as if the same were herein incorporated *in haec verba.*

And the plaintiffs allege that thereafter to-wit on July 29th, A. D. 1907, the plaintiffs made and entered into a certain agreement in writing with the defendant in the words and figures following, to-wit:

July 29th, 1907.

O'Neil Turpentine Company, City:

Dear Sirs:—Referring to our previous negotiations, we are willing that you should have the use and benefit of the services of such of the county convicts of Hillsborough County, Florida, as we do not require, and as we are entitled to under the terms of a certain contract between the County Commissioners of Hillsborough County, and ourselves, dated January 3rd, 1907, upon the understanding and condition that you shall pay us for such services the sum of thirty-five dollars per head per month for each convict whose services are so furnished you, and on the further consideration that this agreement shall continue in force until the first day of January, 1908, and the convicts shall at all times be under our direction and control as the lessees thereof, and you shall assume in regard to the convicts whose services you may have the use of all liabilities of every character and nature whatsoever imposed upon us under the terms of the said contract between us and the County Commissioners of Hillsborough County. It is further

understood that you shall pay us on the first day of August, 1907, in advance the amount due for the services of all convicts then delivered to you up to the first day of October, 1907, and that you shall pay us on the first day of October, 1907, for the services of all convicts not already paid for up to that time, as well as for the services of all convicts then in your custody up to the first day of January, 1908, and that on the first day of January, 1908, you shall pay us for the services of all convicts not already paid for between October 1, 1907, and January 1, 1908.

It is further understood that you shall relieve and indemnify us from any and all liability of any kind or character whatsoever in respect to all convicts of which you are given custody and that you shall be bound to take and receive from us at any time all convicts coming to us under the said contract between the County Commissioners of Hillsborough County and ourselves, of whose services we are not in need.

It is further understood that we shall have the right to see and determine whether or not the said convicts are properly treated by you in regard to food, accommodation and otherwise, and that if the treatment of the same in any respect is not satisfactory to us, we shall have the right to retake the said convicts at any time, it being understood that we do not by making this offer to you in any respect surrender the control and custody of the said convicts coming to us under the said contract between the County Commissioners of Hillsborough County and ourselves.

HALL & BIGHAM,
*By W. R. Bigham.*

We assent to the terms of the foregoing offer and agree to accept the services of the convicts on the terms

therein set forth and to be bound to the performance of all provisions and conditions therein set forth.

O'NEIL TURPENTINE COMPANY,

*By W. T. Hendricks, Mgr.*

And the plaintiffs further allege that under and in pursuance of the agreement in writing herein set forth between them and the defendant they furnished to the defendant the use and benefit of the services of various County convicts of Hillsborough County, Florida, for which the defendant, to-wit on October 1st A. D. 1907, under the terms of the said agreement hereinbefore set forth became liable to pay to the plaintiffs a large sum of money to-wit, the sum of sixteen hundred and thirty-eight dollars, yet the defendant did not pay to the plaintiffs the said sum of money, but only paid to the plaintiffs the sum of one thousand four hundred and twelve and 72-100 dollars on account thereof, whereby on the said first day of October, A. D. 1907, there became and was a balance due to the plaintiffs on account of the use of the said convicts amounting to a large sum of money, to-wit, the sum of two hundred and twenty-five and 28-100 dollars.

And the plaintiffs further allege that under and in pursuance of the said contract hereinbefore set forth the plaintiffs delivered to the defendant two convicts, to-wit, Peter James and C. V. Hogan, whose sentences expired, respectively, on August 4th, 1908, and August 6th A. D. 1908, and that while the said defendant had the custody and the right to the use of the services of the said Peter James and C. V. Hogan, the said defendant negligently permitted them, and each of them, to escape from custody, and the said convicts, and each of them, still remain and now are, at large and cannot be recaptured, and the plaintiffs have been compelled to pay to the County of Hillsborough under the terms of the said

contract, Exhibit "A" hereto, to-wit, on January 1st, A. D. 1908, the sum of twenty-eight dollars per month for the said Peter James and the said C. V. Hogan, and will further be compelled to pay to the said County of Hillsborough on the first day of April A. D. 1908, for the services of the said Peter James and C. V. Hogan the sum of twenty-eight dollars per month, and will further be compelled to pay to the County of Hillsborough on the first day of July, A. D. 1908, for the services of the said Peter James and C. V. Hogan the sum of twenty-eight dollars per month.

Wherefore the plaintiffs sue the defendant, and claim fifteen hundred dollars damages.

GLEN & HIMES,<br><em>Attorneys for Plaintiffs.</em>

*BILL OF PARTICULARS HERETO ATTACHED.*
Exhibit "A."

*State of Florida,*
*County of Hillsborough.*

This Agreement, made and entered into on this the 3rd day of January, 1907, between J. N. Holmes, C. B. Ware, J. M. Towne, G. F. Altman and J. L. Hackney, as members of the Board of County Commissioners of Hillsborough County, Florida, hereinafter called the County, and T. C. Hall and W. R. Bigham, hereinafter called the lessee.

WITNESSETH, first: That said lessee for and during the period of two years commencing on the first day of January, A. D. 1907, and ending on the first day of January, A. D. 1909, shall have, use and control the labor, services, use and custody of all the prisoners, whether male or female, on and under sentence of imprisonment in the county jail of Hillsborough County, State of Florida, whose term of confinement shall be for a term of thirty days or more; *Provided,* however,

that the said lessee shall not have, use or enjoy or control the labor, services, use or custody of any of such prisoners longer than said prisoner shall be legally liable to imprisonment under his or her sentence, and the Constitution and Laws of the State of Florida, and the regulation and allowance as to and for credits and deductions of the time from the terms of sentence for and on account of good behavior; *Provided*, further, that the rights and powers of the said lessee to the custody, services, use and labor of any of such convicts shall in all events be subject to the exercise of the power to pardon and commute punishment and grant reprieve under the Constitution and Laws of the State of Florida, *Provided* always and this agreement is upon the express condition that such prisoners or convicts are to be kept used and employed at some point or points in the County of Hillsborough, and under no circumstances to be taken or removed beyond the limits of said County; *Provided,* further, that the said lessee shall take and receive all convicts or prisoners on hand on the first day of January, A. D. 1907, whose sentence does not expire within thirty days from said date.

All convicts are to be taken and received by the said lessees at the county jail, and if the said lessee shall fail to remove any convict after five days' notice from the County that such convict is there for delivery, all expenses incurred shall be chargeable to the said lessee. No convict shall be required to work more than ten hours in each twenty-four hours, and no convict shall be required to work on the Sabbath Day, except domestic servants.

This agreement is upon the further expressed condition that there shall be filed with the Board of County Commissioners at each regular meeting a statement of the physical condition of the convicts, which report shall

be made by the county physician, or his assistant, all of which examination and report together with all medicines, drugs and incidental expenses attached thereto, shall be borne by the lessee.

It is further understood and agreed that the lessee shall at his own expense, feed, clothe, house and guard and safely keep all convicts delivered to him and his liability and responsibility shall begin from the delivery of such convicts to the lessee at the county jail. It is understood that no deduction shall be made because of sickness of any convict for any cause whatsoever.

If any convict shall escape after being delivered to the lessee, the lessee shall pay for such convict for the convict's full term at the contract price. It is further agreed that whenever the convict shall be released because of the expiration of his term or otherwise, he shall be released in as good condition, with reference to his clothing, as far as possible, as when received.

It is further provided that the lessee shall stand and become liable to the County of Hillsborough for whatever sum or sums the County may be required to pay by judgment or otherwise, including attorney's fees and costs, which may be incurred by the County, because of the wrongful act or negligence of the lessee or his agents and employees resulting in the personal injury of any convict. Provided the lessee shall first be notified, and given an opportunity to defend.

*Provided,* that the lessee shall on the first day of January, April, July and October of each year in advance pay to the County, through its Board of County Commissioners the sum of twenty-eight and 10-100 dollars per month for each convict; *Provided,* the first payment in January, A. D. 1907, shall amount to not less than Five thousand dollars, and whatever amount shall be in excess of the amount actually due shall be deducted from

the April payment; and the lessee hereby agrees that he will deliver to any one that the county shall name at the expiration of this agreement all the convicts in his hands by virtue of his agreement.

And the County Commissioners or their agents shall have the supervision of the stockade as to sanitation, sleeping quarters and as to the inspection of food.

This agreement is upon the expressed condition that the lessee shall within five days after the date of this agreement execute a good and sufficient bond in the sum of Twenty Thousand Dollars ($20,000) conditioned for the faithful performance of this agreement, said bond to be approved by the Board of County Commissioners of Hillsborough County, Florida.

IN WITNESS WHEREOF THE COUNTY by its Board of County Commissioners has executed this instrument and caused the corporate seal of Hillsborough County, Florida, to be hereto attached and the lessee has signed and executed the same the day and year first above written.

|  |  |
|---|---|
| J. N. HOLMES, | (Seal.) |
| J. M. TOWNE, | (Seal.) |
| J. L. HACKNEY, | (Seal.) |
| G. F. ALTMAN, | (Seal.) |

Witnesses:

CRAIG PHILLIPS.    C. B. WARE,    (Seal.)
*As Members of the Board of County Commissioners of Hillsborough County, Florida.*

THOS. C. HALL,    (Seal)
*Attest*: C. M. KNOTT,    W. R. BIGHAM,    (Seal)
    *By* JNO. J. HAUPT, *D. C.*    *Lessee.*
    *Clerk of Board of County Commissioners of Hillsborough County, Florida.*
        (CIRCUIT COURT SEAL.)

The defendant filed a demurrer to this declaration and for substantial matters of law to be argued alleged in substance.

(1) That the contract sued on was against public policy, and void (2) that the contract set out shows on its face that there was no obligation on part of the defendant to pay anything where convicts escape (3) that the contract shows on its face that the plaintiffs were responsible for the safe-keeping of convicts (4) that the contract between the plaintiffs and defendant cannot be understood except in connection with the contract between the County Commissioners and the plaintiffs which it not set out (5) that the contract, if any, beween the plaintiffs and County Commissioners shows that it was a contract involving personal trust and confidence which could not be assigned.

This demurrer was sustained on the ground that the contract between the plaintiffs and defendant is void because the same is against public policy and in violation of the statutes of this State governing the hiring of county convicts.

The plaintiffs having announced that they did not wish to amend the declaration, the court gave judgment against the plaintiffs in favor of the defendant.

The statute law in force when the contract between the plaintiffs and the Board of County Commissioners is contained in Sec. 4109 of the General Statutes of 1906. It is as follows: "4109. (3032.) *County Convicts may be put to labor.*—The Board of County Commissioners may employ all persons imprisoned in the jails of their respective counties under sentence upon conviction for crime or for failure to pay a fine and costs imposed upon conviction for crime, at labor upon the streets of incorporated cities or towns, or upon the roads, bridges and public works in the several counties where

they are so imprisoned; or the said boards may, in their discretion, hire out such persons upon such terms and conditions as they may think advisable, in which case the proceeds arising from such contracts shall be paid into the county treasury."

This section was held constitutional in Holland v. State *ex rel.* Duval County, 23 Fla. 123, 1 South. Rep. 521.    This section was amended by chapter 5707, laws of 1907, approved June 3rd, 1907, by requiring the Board of County Commissioners to advertise for thirty days in one or more of the County papers their intention to lease, hire out, or let, said prisoners, so as to give notice and opportunity to those desiring to bid, to be present and submit their bids.

Section 4164 of the General Statutes provides that: "the Governor and the Supervisor of the State prisoners are hereby empowered to enforce such rules and regulations, concerning the care, management and supervision of county convict camps as may be deemed necessary to give them the same humane treatment and protection required by law, and by the rules of the Board of Commissioners of State Institutions, relative to State prisoners."    It is unnecessary to set out here all the statutes which provide for the humane and proper treatment of convicts contained in the statutes.    So far as we can discover, they seem to be ample, if properly enforced and that this is not done, in so far as it is possible to enforce the laws, we have not the slightest reason to suspect.    We think we can take judicial notice of all questions relating to public policy, and inform ourselves from any accessible source of facts bearing on the same.

Twenty-five rules have been promulgated by the Governor in regard to the care and maintenance of county convicts by contractors. "Rule 13 provides that each

prisoner shall be confined to the stockade and regular place of work of the contractor and shall not be sub-leased to any private firm or corporation not making a regular business of leasing convicts."

There is no provision of our statutes relating to either State or County convicts which forbids their being sub-hired or sub-leased, and it has been for a number of years the practice of contractors or hirers to sub-hire them. This practice has been well known to the legislature, and it has not seen fit to prevent it by legislation or to enounce a public policy on the subject, variant from that which prevailed in practice. The Supreme Court of Alabama, in the case of Arrington v. Morgan, 75 Ala. 606, held : that a hirer of county convicts could not sub-let them to another person. Such a sub-letting being against public policy and void. The suit in that case was very similar to the one at bar.

In the case of State *ex rel.* Arkansas Industrial Company v. Neel, 48 Ark. 283, 3 S. W. Rep. 631, the Supreme Court of Arkansas held that the lessees of the penitentiary were not authorized by the statute to hire out for labor or make a contract for the use and custody of the convicts committed to said prison. This was a habeas corpus case. The court in that case construed the contract as one of personal trust, which could not be assigned. It does not appear what were the provisions of the contract of sub-hiring, or what provisions it contained for the supervision and care of the convicts.

In the case of Horner v. Wood, 23 N. Y. 350, it was held that a contract concerning the labor of convicts was assignable under the statutes of New York, which did not clothe a contractor with a fiduciary or quasi official character conferred upon him from motives relating to his personal fitness.

In the case of State v. McCauley, 15 Cal. 429, the

statute does not expressly authorize the making of a contract, leasing the convicts by the Board of State Prison Commissioners which was assignable. It prescribed no specific terms for such a lease. It was held that a contract made with a lessee and his assigns was assignable, and that the personal liability of the assignor continued after the assignment.

In general contracts are assignable, unless forbidden by the terms of the contract, or an assignment would violate some rule of public policy or some statute or unless they involve a question of personal trust and confidence. 4 Cyc. 20 *et seq.*

In the instant case, the first and fifth grounds of the demurrer to the declaration raise the question of public policy and personal trust.

In the case of Atlantic Coast Line R. Co. v. Beasley, 54 Fla. 311, 45 South. Rep. 761, text 786, this court had occasion to examine the authorities on the subject of public policy and in head note fourteen condenses its conclusions on the subject. It is there said: "public policy is variable. The very reverse of that which is the policy of the publc at one time may become public policy at another, hence no fixed rules can be given by which to determine what is public policy. A contract is not void as against public policy, unless it is injurious to the interest of the public or contravenes some established interest of society. It is the province of a court to expound the law only, and not to speculate upon what is the best in its opinion for the advantage of the community. Hence the public policy of a State or nation should be determined by its constitution, laws and judicial decisions, and not by the varying opinions of laymen, lawyers or judges, as to the demands of the interests of the public. Judicial tribunals should hold themselves bound to the observance of rules of extreme caution when called

upon to declare a transaction void on the ground of publi·policy, and prejudice to the public interest must clearly appear before a court would be warranted in pronouncing the transaction void on this account."

The legislature of this State has not by statute fixed or indicated a public policy with reference to the sub-hiring of convicts. The Board of State Institutions and County Commissioners are given a very extensive discretion in all matters relating to the hiring of convicts. We are advised that the practice of sub-hiring has prevailed for several years without objection if not with their express assent, under conditions which it seems to us must amply provide for the humane treatment and care of the convicts.

Under such circumstances, we do not feel authorized to say that the contract attacked in the instant case was void as being against public policy, nor do we see from anything in the statutes that the sub-hiring in the instant case was forbidden on the ground of personal trust. The contractor does not undertake to relieve himself from any responsibility by sub-hiring; and the sub-hirer is bound by his contract to observe in all respects the terms of the original contract. The contract and sub-contract seem to omit nothing essential to the humane treatment of the convicts. The County Commissioners so far as we are advised have made no objection to the sub-hiring. It seems to us therefore, that the demurrer should not have been sustained to the declaration on the two named grounds.

The second ground of the demurrer does not go to the merits of the whole declaration, but only to one feature of it. A motion to reform, or strike or objections to testimony, or a charge by the court is the proper way to test the question attempted to be raised. The

other grounds of the demurrer we also think are not well taken.

The judgment is reversed and the case remanded for further proceedings.

TAYLOR and COCKRELL, JJ., concur.

PARKHILL, J.—(*dissenting.*)—I am of the opinion that the contract sued upon is in violation of the statute and void as against public policy.

In Atlantic Coast Line R. R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761, it is said that the public policy of a State must be determined by its constitution, laws and judicial decisions; not by the varying opinions of laymen, lawyers or judges as to the demands of the interests of the public.

I have looked in vain for any statutory authority for the lessee of county convicts to sub-let them. The only authority given to any one to let such convicts to hire is that conferred by section 4109 of the General Statutes of 1906, on the Board of County Commissioners. In considering a statute very similar to this one, the Supreme Court of Alabama in Arlington v. Morgan, 75 Ala. 606, text 608, speaking through Mr. Justice SOMERVILLE, expressed clearly the views I entertain, as follows: "This statute is strictly penal in its nature, being designed to enforce a species of involuntary servitude in the nature of legalized slavery, incurred by the commission of crime. Being in restriction of the citizen's liberty, such a statute can not be enlarged by implication, or extended to cases not obviously within its words and purport. The servitude legalized is that incurred by the act of the commissioners' court in letting the convicts to some person whom they are authorized to select, and who may be selected because of his good standing and peculiar fitness to take custody of the hirelings. The statute nowhere permits, expressly, or by the remotest

implication, a sub-hiring to another and distinct person. This would be tantamount to allowing an assignment of the contract of hiring, without permission of the commissioners' court. It would not only be contrary to the policy of the law, as tending obviously to results in violation of the purpose and spirit of the whole system of hard labor, but it is unauthorized by the plain words of the statute, and, therefore, prohibited by implication."

This statute was first enacted in 1877, and for thirty years the legislature has not seen fit to authorize a different policy. The language of this statute, as well as the other provisions requiring the county commissioners to advertise their intention to hire said prisoners so that those desiring to hire convicts may be present and submit their bids, and providing for the enforcement of rules for the humane treatment and protection of the convicts seems to cry aloud against a policy of permitting a private citizen to put unfortunate and helpless human beings, though they may be transgressors, into the hands and control of strangers to the law.

In one part of the contract between the lessees and sub-lessees there is an attempt on the part of the lessees to retain the direction and control of the convicts, while in another part of the said contract it is plain that the sub-lessees are to have the custody of the convicts and to use the same, for the contract contains this language: "you (sub-lessees) should have the use and benefit of the services of the convicts," and in another part of the said contract the convicts are referred to as "convicts of which you (sub-lessees) are given custody."

In my opinion it makes no difference that the contract sued upon contains provisions like those in the contract between the county commissioners and the lessees of the convicts. In the case of Arrington v. Morgan, 75 Ala. 606, the contract there held to be illegal and void con-

Hall and Bingham v. O'Neil Turpentine Co.—Opinion of Court.

tained "covenants substantially the same as those contained in the bond exacted under the statute from the plaintiff, as original hirer."

WHITFIELD, J.—(concurring.)—The statutes of the State relative to the custody, care and control of persons convicted of crime, indicate a public policy that requires rigid governmental supervision at all times to the end that convicts may be properly cared for and humanely treated, and not overworked or neglected or abused.

Authority is given to hire out for purposes of labor those who have been convicted of crime, and the statute does not forbid subletting of the convicts; but the provisions for official supervision and control designed to secure the well-being of convicts, do not contemplate a complete transfer of responsibility to others than those to whose custody convicts are committed under the stattue as laborers for hire. Where a contract in effect transfers the complete and entire care, custody and control of convicts to some one other than those to whom they are hired under the statute, such contract might be contrary to the public policy of the State with reference to preserving the well being of convicts. If so, the contract may not be enforced by the courts in deference to the principles expressed in the maxims, *ex dolo malo non oritur actio,* and *in pari delicto potior est conditio defendentis.*

The courts in administering the law will not aid either party to an agreement that is violative of positive law or of public policy except in proper cases where public policy requires action by the court, or where, because of fraud, duress or other considerations, the parties are not *in pari delictio,* and perhaps in other cases.

In this case the contract on the part of the original contractor expressly provides that: "the convicts shall at

Hall and Bingham v. O'Neil Turpentine Co.—Opinion of Court.

all times be under our direction and control as the lessees thereof;" and also that "it is further understood that we shall have the right to see and determine whether or not the said convicts are properly treated by you in regard to food, accommodations and otherwise, and that if the treatment of the same in any respect is not satisfactory to us, we shall have the right to retake the said convicts at any time, it being understood that we do not by making this offer to you in any respect surrender the control and custody of the said convicts coming to us under the said contract between the County Commissioners of Hillsborough County and ourselves." Other provisions of the contract between the lessees and sub-lessees are not necessarily in conflict with these express reservations.

The quoted provisions of the contract indicate a purpose to reserve to the original contractors full authority to discharge their obligations under the contract with the County Commissioners, and no such case is presented as warrants the courts in declining at the instance of the sub-contractor to enforce the contract as made.

When no statute or public policy is violated, the courts will not control the methods adopted for properly utilizing the convict labor authorized by the law to be hired out and used under governmental supervision. Any contract made for the hire of convicts is subject to the provisions of law designed for the care and proper treatment of such persons.

SHACKLEFORD, C. J., concurs with WHITFIELD, J.