VAN NORTWICK, J.
 

 Frederick W. Kortum, Jr., a public adjuster, appeals a final judgment determining that section 626.854(6), Florida Statutes (2008), which bans solicitation by public adjusters for a period of 48 hours, is not unconstitutional. We reject the argument of the Department of Financial Services, appellee, accepted by the trial court, that the statute is ambiguous and, as a result, the agency’s interpretation that the statute constitutionally regulates only the time, place, and manner of commercial solicitation should be accepted. We hold that the statute unambiguously bans all solicitation for 48 hours and that
 
 *1014
 
 this restriction on commercial speech violates Article I, § 4 of the Florida Constitution under the standards of
 
 Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,
 
 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Accordingly, we reverse and remand for further proceedings.
 

 Factual and Procedural History
 

 A
 
 public adjuster, for compensation, assists insureds in negotiating for or effecting the settlement of a claim for loss or damages covered by an insurance policy. § 626.854(1), Fla. Stat. (2008). Florida has regulated public adjusters at least since 1955.
 
 See
 
 § 636.23(5), Fla. Stat. (1955);
 
 Larson v. Lesser,
 
 106 So.2d 188 (Fla.1958). During its 2007 special session, the Florida Legislature created the Task Force on Citizens Property Insurance Claims Handling and Resolution (Task Force) to make recommendations regarding the 2004-2005 hurricane claims of Citizens Property Insurance Corporation.
 
 [1]
 
 During its work, the Task Force became aware of the impact that public adjusters have on the insurance claims process following a hurricane. The Task Force identified abuses on the part of certain public adjusters and proposed legislation to revise the statutes governing public adjusters. Pertinent to this appeal, with respect to solicitation by public adjusters, the Task Force recommended that the legislature enact the following statutory provision:
 

 A public adjuster shall not directly or indirectly through any other person or entity engage in face-to-face or telephonic solicitation or enter into a contract with any insured or claimant under an insurance policy until at least 72 hours after the occurrence of an event that may be the subject of a claim under the insurance policy unless contact is initiated by the insured or claimant.
 

 The language of the statute enacted by the legislature,
 
 see
 
 § 626.854(6), Florida Statutes (2008), differed from the recommendation and provides as follows:
 

 A public adjuster may not directly or indirectly through any other person or entity
 
 initiate contact or
 
 engage in face-to-face or telephonic solicitation or enter into a contract with any insured or claimant under an insurance policy until at least
 
 ⅛8
 
 hours after the occurrence of an event that may be the subject of a claim under the insurance policy unless contact is initiated by the insured or claimant.
 

 (emphasis added). The legislature changed the language recommended by the Task Force by adding the phrase “initiate contact or” and reducing the temporal length of the solicitation restriction from 72 to 48 hours.
 

 Kortum, a public adjuster, filed a complaint for declaratory and injunctive relief alleging that section 626.854(6) violates his constitutional rights to free speech, equal protection of the laws, and to be rewarded for his industry. Because we agree with Kortum that section 626.854(6) unconstitutionally burdens the commercial free speech rights of public adjusters, we do not address his further contention that the statute violates his right to equal protection of the law or his right “to be rewarded for industry” guaranteed by Article I, § 2 of the Florida Constitution.
 

 
 *1015
 
 At trial, Kortum introduced testimony that the first 48 hours after a claim inducing event are critical because an uninformed policyholder can make decisions that would substantially diminish recovery under the insurance policy by failing to preserve evidence, by failing to find damaged property, and by overspending on mitigation or restoration efforts. The Department’s expert witness disagreed. Further, the Department asserted that section 626.854(6) did not prohibit a public adjuster from contacting a potential claimant through email or in writing. Both Kortum and his expert witness contended that the statute prohibited contact or communication of any kind with claimants during the 48-hour period. Neither party has introduced relevant legislative history to support their respective positions. The Department candidly conceded at oral argument, however, that, if the statute is read as a total ban on all solicitation during the first 48 hours, it cannot pass constitutional muster.
 

 In its final judgment, the trial court found that the language of section 626.854(6) is ambiguous and, therefore, the agency’s interpretation should be upheld unless that construction is clearly unauthorized or erroneous.
 
 GTC, Inc. v. Edgar,
 
 967 So.2d 781, 785 (Fla.2007). The court accepted the Department’s interpretation that the statute only prohibited face-to-face or telephonic communication within the first 48 hours. Next, relying upon
 
 United States v. O'Brien,
 
 891 U.S. 867, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the court found that the statute regulates conduct and only narrowly affects speech by prohibiting face-to-face solicitations and telephonic solicitations.
 
 O’Brien
 
 holds that when “speech” and “nonspeech” elements are combined in the government regulation of a course of conduct:
 

 [Tjhat ... government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
 

 Id.
 
 at 376-77, 88 S.Ct. 1673. The trial court found that a legitimate governmental purpose exists to provide a citizen who has been traumatized by a casualty loss with some “breathing room before making weighty decisions.” To accomplish such purpose, the trial court found that section 626.854(6) was narrowly drawn and did not prohibit anything other than face-to-face solicitation and telephonic solicitations. The court found that the primary purpose of the statute is to control conduct, but recognized that the statute does affect the public adjuster’s ability to speak. This appeal followed.
 

 Commercial Speech
 

 The trial court’s construction of a statute is subject to
 
 de novo
 
 review.
 
 Daniels v. Fla. Dep’t of Health,
 
 898 So.2d 61, 64 (Fla.2005). Appellee has relied upon two cases to support its argument that section 626.854(6) is a conduct statute,
 
 O’Brien
 
 and
 
 State v. Comforti,
 
 688 So.2d 350 (Fla. 4th DCA 1997). Those cases are inapposite since they clearly regulated conduct.
 
 O’Brien
 
 involved an antiwar protester’s conviction for burning his draft card.
 
 Conforti
 
 involved lewd dancing in a nightclub.
 

 We agree with Kortum that
 
 Central Hudson
 
 governs the case before us. “[Cjommercial speech ... is, expression related solely to the economic interests of the speaker and its audience.”
 
 Central Hudson,
 
 447 U.S. at 561, 100 S.Ct. 2343.
 
 *1016
 
 “Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information.”
 
 Id.
 
 Commercial speech has been afforded protection under the First Amendment since
 
 Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,
 
 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (invalidating a state law prohibiting pharmacists from advertising the price of prescription drugs). However, commercial speech is not accorded the same protection as other constitutionally protected expression.
 
 Central Hudson,
 
 447 U.S. at 563, 100 S.Ct. 2343. As the court explained in
 
 Virginia Board of Pharmacy,
 
 commercial speech can be subject to time, place, and manner restrictions provided that they are imposed without reference to the content of the speech, they serve significant governmental interests, and “they leave open ample alternative channels for communication of the information.” 425 U.S. at 771, 96 S.Ct. 1817.
 

 In
 
 Central Hudson,
 
 the court set forth the four-part test to determine the constitutionality of a restriction on commercial speech:
 

 At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
 

 Central Hudson,
 
 447 U.S. at 566, 100 S.Ct. 2343. The parts of the test are not entirely discreet and are to some extent interrelated.
 
 Greater New Orleans Broadcasting Ass’n v. U.S.,
 
 527 U.S. 173, 184, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999). Once it is determined that the speech concerns a lawful activity, the government bears the burden of identifying a substantial interest 'and justifying the challenged restriction.
 
 Edenfield v. Fane,
 
 507 U.S. 761, 770, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (“It is well established that ‘the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.’ ” (quoting
 
 Bolger v. Youngs Drug Prods. Corp.,
 
 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)).
 

 Third Prong of Central Hudson Test
 

 Applying
 
 Central Hudson,
 
 it is without debate that the commercial speech involved in this case concerns lawful activity. Next, Kortum concedes that the interest purportedly served by the statute (to seek to ensure more ethical behavior on the part of public adjusters generally and to ensure the privacy of people who have just suffered a calamity) are substantial. Kor-tum maintains, however, that the prong requiring the Department to demonstrate that the regulation directly advances the governmental interest asserted was not met because the Department failed to prove that solicitation by public adjusters in Florida causes actual harm.
 

 Kortum acknowledges that there was evidence of three distinct instances of solicitation misconduct by public adjusters. Nevertheless, he contends this evidence was meager and does not overcome the lack of evidence that Florida consumers perceive public adjusters as prone to misconduct or evidence of prosecutorial investigations involving solicitation-related misconduct. Mere “speculation as to possibilities” does not satisfy this
 
 Central Hudson
 
 prong.
 
 Beckwith v. Dep’t of Bus. and Prof'l Regulation,
 
 667 So.2d 450, 452
 
 *1017
 
 (Fla. 1st DCA 1996) (invalidating a restriction on solicitation by hearing aid specialists because of the failure to satisfy the third prong of
 
 Central Hudson). See also Edenfield v. Fane
 
 (striking down a restriction on solicitation by CPAs on the grounds, among others, that Florida had not offered studies or anecdotal evidence showing that the restriction addressed a real problem).
 

 We reject Kortum’s argument that the Department was required to introduce evidence of actual harm. Instead, the government need only show “that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.”
 
 Edenfield,
 
 507 U.S. at 771, 113 S.Ct. 1792. While many cases rely upon empirical data to support this prong, introduction of empirical data is not always necessary as a common sense conclusion will sometimes suffice.
 
 Tennessee Secondary School Athletic Ass’n v. Brentwood Academy,
 
 551 U.S. 291, 300, 127 S.Ct. 2489, 168 L.Ed.2d 166 (2007). Contrary to Kortum’s argument, this is not a situation of imaginary or unjustified harms. Protecting citizens that have suffered a traumatizing loss from intrusive unsolicited contact by public adjusters by granting them a brief period of breathing room furthers the governmental interest asserted. Further, the statute was supported by a legislative study, statistical data and anecdotal evidence.
 
 Compare Florida Bar v. Went For It, Inc.,
 
 515 U.S. 618, 626, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (upholding Florida Bar rules that “prohibit[ed] personal injury lawyers from sending targeted direct mail solicitations to victims and their relatives for 30 days following an accident or disaster,”
 
 id.
 
 at 620, 115 S.Ct. 2371 and ruling that the regulation there was supported by a two-year study, statistical data, and anecdotal evidence). We find that section 626.854(6) satisfies the third prong of
 
 Central Hudson.
 

 Fourth Prong of Central Hudson Test
 

 Turning to the fourth prong, we are required to examine whether section 626.854(6) is more extensive than necessary to serve the asserted governmental interest. This analysis requires that we determine whether the statute contains a complete ban on all solicitation for 48 hours or, as the Department argues, the statute prohibits only face-to-face or telephonic solicitation and permits written and email solicitation. We agree that we should strive to construe a statute in a manner that avoids holding the statute unconstitutional.
 
 State v. Giorgetti,
 
 868 So.2d 512, 518 (Fla.2004). Should we find nothing which would indicate that such a limiting construction was intended by the legislature, however, we are precluded from rewriting the statute to preserve its constitutionality.
 
 State v. Cronin,
 
 774 So.2d 871, 874-75 (Fla. 1st DCA 2000).
 

 In
 
 Cronin,
 
 we held that an anti-solicitation statute, section 817.234(8), Florida Statutes (1997), which prohibited a person from soliciting business for the purpose of making motor vehicle tort claims or claims for PIP benefits, was violative of the First Amendment. The state urged this court to construe the statute as including a fraudulent intent element, but the court found no support for that argument.
 
 Cronin,
 
 774 So.2d at 874. Further, we rejected the state’s argument that the statute could be construed as applying only to in-person or telephonic solicitations because we found no support in the statutory language that this limiting construction was intended by the legislature.
 
 Id.
 
 at 875. In rejecting a construction not supported by the plain language of the statute, we explained:
 

 
 *1018
 
 Such construction, however, must be consistent with the legislative intent ascertainable from the statute itself or its common sense application.
 
 See State v. Globe Communications Corp.,
 
 648 So.2d 110, 113 (Fla.1994);
 
 Long v. State,
 
 622 So.2d 536, 537-38 (Fla. 1st DCA 1993). “It is fundamental that judges do not have the power to edit statutes so as to add requirements that the legislature did not include.”
 
 Meyer v. Caruso,
 
 731 So.2d 118, 126 (Fla. 4th DCA 1999).
 

 Id.
 
 at 874.
 

 Examining the plain language of section 626.854(6), it is clear to us that it prohibits all public adjuster-initiated contact, whether electronic, written or oral. The statute mandates that “[a] public adjuster may not directly or indirectly through any other person or entity initiate contact ... with any insured or claimant under an insurance policy....” The Department’s argument that the statute does not prohibit written contact ignores the plain, natural meaning of the statute.
 

 We agree with appellant that the adverbial phrase “directly or indirectly through any other person or entity” modifies all three of the statute’s prohibitions (initiate contact, engage in face-to-face or telephonic solicitation, or enter into a contract).
 
 State v. Bodden,
 
 877 So.2d 680, 685 (Fla.2004) (“[t]he legislature is presumed to know the meaning of words and the rules of grammar, and the only way the court is advised of what the legislature intends is by giving the generally accepted construction, not only to the phraseology of the act but to the manner in which it is punctuated.” (quoting
 
 Florida State Racing Comm’n v. Bourquardez,
 
 42 So.2d 87, 88 (Fla.1949)). Reading the statute as the Department contends would require the court to eliminate the “initiate contact” prohibition inserted by the legislature. “It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.”
 
 Hechtman v. Nations Title Ins. of New York,
 
 840 So.2d 993, 996 (Fla.2003). Further, as argued by Kortum, there is no legislative history that supports the Department’s interpretation of the statute. Though there may have been some support for the Department’s argument in recommendations made by the Task Force, there has been no showing that the legislature adopted the findings and recommendations of the Task Force in enacting section 626.854(6).
 

 Because section 646.854(6) unambiguously contains a ban on all solicitation for 48 hours, the Department has failed to prove that the statute is narrowly tailored to meet the State’s objectives. We find persuasive the decision of the Pennsylvania Supreme Court in
 
 Insurance Adjustment Bureau v. Insurance Commissioner,
 
 518 Pa. 210, 542 A.2d 1317 (1988). In that case, the Pennsylvania Supreme Court struck down a law prohibiting public adjusters from soliciting business for 24 hours after a claim inducing event. The court rejected the argument that the 24-hour ban was merely a reasonable time, place, and manner restriction noting that “the period of time immediately following the disaster may be the only time during which the property owner can be located before moving to an unknown address because of the disaster which has affected his property.”
 
 Id.
 
 at 1323.
 

 We reject the contention of amicus curiae that, even if the statute is construed as a prophylactic ban on all solicitation, it is constitutional under the rational employed in
 
 Ohralik v. Ohio State Bar Ass’n,
 
 436 U.S. 447, 449, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) (holding that state “may discipline a lawyer for soliciting clients in per
 
 *1019
 
 son, for pecuniary gain, under circumstances likely to pose dangers that the state has a right to prevent”). Both
 
 Ohralik
 
 and
 
 Florida Bar v. Went For It
 
 allow a prophylactic ban on lawyer solicitation. In
 
 Edenfield,
 
 the court held that the ban on direct, in person solicitation by certified public accountants (CPAs) adopted by the Florida Board of Accountancy violated the commercial speech rights of the CPAs to which First Amendment protection applied. 507 U.S. at 763, 113 S.Ct. at 1796. Like amicus curiae here, the Board in
 
 Edenfield
 
 argued that
 
 Ohralik
 
 supported its prophylactic ban on solicitation by CPAs. The court rejected the Board’s reliance on
 
 Ohralik,
 
 explaining:
 

 We reject the Board’s argument and hold that, as applied in this context, the solicitation ban cannot be justified as a prophylactic rule.
 
 Ohralik
 
 does not stand for the proposition that blanket bans on personal solicitation by all types of professionals are constitutional in all circumstances. Because “the distinctions, historical and functional, between professions, may require consideration of quite different factors,”
 
 Virginia State Bd. of Pharmacy, supra,
 
 425 U.S., at 773, n. 25, 96 S.Ct., at 1831, n. 25, the constitutionality of a ban on personal solicitation will depend upon the identity of the parties and the precise circumstances of the solicitation. Later cases have made this clear, explaining that
 
 Ohralik’s
 
 holding was narrow and depended upon certain “unique features of in-person solicitation by lawyers” that were present in the circumstances of that case.
 
 Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,
 
 471 U.S., at 641, 105 S.Ct., at 2277;
 
 see also Shapero v. Kentucky Bar Assn.,
 
 486 U.S. 466, 472, 108 S.Ct. 1916, 1921, 100 L.Ed.2d 475 (1988).
 

 507 U.S. at 774, 113 S.Ct. at 1802. As in
 
 Edenfield,
 
 we find these “lawyer cases” distinguishable, because lawyers are trained in the art of persuasion, public adjusters are not. Thus, direct in-person solicitation by lawyers is more in need of regulation. 507 U.S. at 774-75, 113 S.Ct. at 1802-03.
 

 Amicus curiae further asserts that public adjusters are soliciting clients who are in the same position as accident victims and that section 626.854(6) is designed to prevent the possibility that a public adjuster can take advantage of a traumatized person who is dealing with the aftermath of a disaster. Although public adjusters represent the interests of claimants, as CPAs in
 
 Edenfield
 
 they do not have the advocacy training and persuasive skills of attorneys. The United States Supreme Court has expressly limited its approval of a prophylactic ban on all solicitation to the attorney-client relationship which was present in
 
 Ohralik. Brentwood Academy,
 
 551 U.S. at 305, 127 S.Ct. 2489. In
 
 Brentwood,
 
 a majority of the court joined in the concurring opinion of Justice Kennedy in which Justice Kennedy concluded that
 
 Brentwood
 
 should be decided solely on the basis that the school had entered a voluntary contract with the state sponsored association in order to promote a code of conduct affecting solicitation. Justice Kennedy addressed the reliance on
 
 Ohra-lik
 
 in Justice Stevens’ opinion, as follows:
 

 Although I have little difficulty concluding that the regulation at issue [prohibiting undue influence in recruitment of middle school students for athletic programs] does not contravene the First Amendment, I do not agree with the principal opinion’s reliance on
 
 Ohralik v. Ohio State Bar Association,
 
 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).
 
 Ohralik,
 
 as the principal opinion notes, involved communications between attorney and client, or, more to the point, the in-person solicitation by an
 
 *1020
 
 attorney of an accident victim as a potential client.
 
 Ohralik
 
 was later extended to attorney solicitation of accident victims through direct mail, though the court was closely divided as to the constitutionality of that extension.
 
 See Florida Bar v. Went For It, Inc.,
 
 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). But the court has declined to extend the
 
 Ohralik
 
 rule beyond the attorney-client relationship.
 

 In
 
 Edenfield v. Fane,
 
 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), the Court struck down a ban on solicitation from accountants to potential clients. The court there made clear that
 
 Ohralik
 
 “did not hold that all personal solicitation is without First Amendment protection.” 507 U.S. at 765, 774, 113 S.Ct. 1792, 123 L.Ed.2d 543. It further noted
 
 “Ohralik’s
 
 holding was narrow and depended upon certain ‘unique features of in-person solicitation by lawyers’ that were present in the circumstances of that case.”
 
 Ibid.
 
 (quoting
 
 Zauderer v. Office of Disciplinary Council of Supreme Court of Ohio,
 
 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985)).
 

 551 U.S. at 304-05, 127 S.Ct. 2489.
 

 Conclusion
 

 In sum, we are persuaded that the Department has failed to prove that section 626.854(6) is narrowly tailored to meet the state’s objectives. “While a statute regulating commercial speech need not be the least restrictive means of achieving the state’s asserted goal objective, it must be narrowly tailored to achieve the desired objective.”
 
 Cronin,
 
 774 So.2d at 875. The Department has not demonstrated that prohibiting property owners from receiving any information from public adjusters for a period of 48 hours is justified by the possibility that some public adjuster may unduly pressure traumatized victims or otherwise engage in unethical or unprofessional behavior. Nor has the Department demonstrated that the other provisions of section 626.854 and the Rules of Professional Conduct and Ethics governing the Florida Association of Public Insurance Adjusters are insufficient to regulate unduly coercive or misleading solicitation by public adjusters.
 

 REVERSED.
 

 LEWIS and CLARK, JJ., concur.
 

 [1]
 

 . Citizens Property Insurance Corporation is a governmental entity created under section 627.351(6), Florida Statutes (2004), to provide insurance for residential and commercial property for property owners who are unable to procure insurance through the private insurance marketplace.
 
 Citizens Property Ins. Corp. v. Ashe,
 
 50 So.3d 645 (Fla. 1st DCA 2010).