CANADY, J.
This case concerns a statutory regulation affecting public insurance adjusters, who are authorized to assist insureds and thirty-party claimants in the filing and settlement of insurance claims. We have on appeal Kortum v. Sink, 54 So.3d 1012 (Fla. 1st DCA 2010), in which the First District Court of Appeal declared invalid section 626.854(6), Florida Statutes (2008), a provision regulating solicitation by public adjusters. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We affirm the First District’s decision that the statute unconstitutionally restricts the commercial speech of public adjusters because it is not narrowly tailored to serve the State’s interests in ensuring ethical conduct by public adjusters and protecting homeowners.
I. BACKGROUND
During a 2007 special session, the Florida Legislature created the Task Force on Citizens Property Insurance Claims Handling and Resolution (Task Force) to make recommendations regarding the 2004-2005 hurricane claims of Citizens Property Insurance Corporation. Among other recommendations, the Task Force proposed that the Legislature enact the following provision governing public adjusters:
A public adjuster shall not directly or indirectly through any other person or entity engage in face-to-face or telephonic solicitation or enter into a contract with any insured or claimant under an insurance policy until at least 72 hours after the occurrence of an event that may be the subject of a claim under the insurance policy unless contact is initiated by the insured or claimant.
Kortum, 54 So.3d at 1014.
During its 2008 regular session, the Legislature enacted a law similar to the Task Force’s proposal. The Legislature added to the proposal a provision stating that a public adjuster may not “initiate contact” with a claimant and reduced the period of the restriction from seventy-two to forty-eight hours. Section 626.854(6), Florida Statutes (2008), thus provides:
A public adjuster may not directly or indirectly through any other person or entity initiate contact or engage in face-to-face or telephonic solicitation or enter into a contract -with any insured or claimant under an insurance policy until at least 48 hours after the occurrence of an event that may be the subject of a claim under the insurance policy unless contact is initiated by the insured or claimant.
*88 The Legislature passed amendments to other portions of section 626.854 in 2009 and 2011, but there have been no revisions to section 626.854(6) since its enactment.
In October 2009, Frederick W. Kortum, Jr., a public adjuster, filed a complaint for declaratory and injunctive relief “alleging that section 626.854(6) violates his constitutional rights to free speech, equal protection of the laws, and to be rewarded for his industry.” Kortum, 54 So.3d at 1014. Kortum asserted that the statute prohibits all public adjuster-initiated communication during the forty-eight-hour period. In response, the Department of Financial Services (Department) contended that section 626.854(6) does not prohibit a public adjuster from using written methods of communication to contact a potential claimant. Kortum, 54 So.3d at 1015.
The trial court determined that section 626.854(6) is ambiguous, accepted the Department’s interpretation that the statute prohibited only in-person or telephonic communication, and ruled that the statute is constitutional. The trial court concluded that because section 626.854(6) primarily regulates conduct — not speech — the case was governed by United States v. O’Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), in which the United States Supreme Court stated:
[Government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
Kortum, 54 So.3d at 1015 (quoting O’Brien, 391 U.S. at 377, 88 S.Ct. 1673). In O’Brien, the Court upheld a federal statute prohibiting the knowing destruction or mutilation of selective service certificates.
In the decision now on review, the First District reversed the trial court’s decision. After determining that the plain language of section 626.854(6) “prohibits all public adjuster-initiated contact, whether electronic, written or oral,” the First District concluded that section 626.854(6) regulates commercial speech — not merely conduct. Kortum, 54 So.3d at 1018. As a result, the First District applied the test from Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), rather than the more deferential O’Brien standard.
In Central Hudson, the Supreme Court set out a four-prong test to be used to evaluate the constitutionality of a statute regulating commercial speech:
At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must [1] concern lawful activity and not be misleading. Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.
447 U.S. at 566, 100 S.Ct. 2343. The First District concluded that section 626.854(6) satisfies the first three prongs of this test but held that the statute does not satisfy the fourth prong of Central Hudson. The First District concluded that the Department failed to demonstrate “that prohibiting property owners from receiving any information from public adjusters for a period of 48 hours is justified by the possibility that some public adjuster may un *89 duly pressure traumatized victims or otherwise engage in unethical behavior.” Kortum, 54 So.3d at 1020. Because the First District concluded that section 626.854(6) unconstitutionally burdens the commercial speech of public adjusters, it did not address Kortum’s assertions that the statute violates his right to equal protection of the law or his right “to be rewarded for his industry” guaranteed by article I, section two of the Florida Constitution. Id. at 1014.
Jeffery Atwater, in his capacity as Chief Financial Officer and head of the Department, appealed the First District’s decision. The Department contends on appeal that section 626.854(6) does not restrict written communication and that because the statute regulates conduct and not the content of speech, the requirements of Central Hudson are not applicable. Based on this narrow reading of the statute, the Department thus argues that the statute is in “the rational relationship test category for the regulation of conduct” and that the statute should be sustained under this test. Appellant’s Initial Brief at 4.
II. ANALYSIS
In the analysis that follows, we first conclude that section 626.854(6) prohibits public adjusters from initiating any form of communication with a potential claimant during the hours immediately following a claim-producing event and that the statute regulates protected commercial speech. We then conclude that the First District was correct in applying the test outlined by the Supreme Court in Central Hudson to evaluate the constitutionality of section 626.854(6). The Department’s argument is predicated entirely on its position regarding the proper interpretation of the statute — a position that we reject. No alternative basis is asserted by the Department for sustaining the constitutionality of the statute and reversing the First District’s decision.
Section 626.854, Florida Statutes (2008), defines and regulates public adjusters in Florida. It states in part:
The Legislature finds that it is necessary for the protection of the public to regulate public insurance adjusters and to prevent the unauthorized practice of law.
(1) A “public adjuster” is any person, except a duly licensed attorney at law as hereinafter in s. 626.860 provided, who, for money, commission, or any other thing of value, prepares, completes, or files an insurance claim form for an insured or third-party claimant or who, for money, commission, or any other thing of value, acts or aids in any manner on behalf of an insured or third-party claimant in negotiating for or effecting the settlement of a claim or claims for loss or damage covered by an insurance contract or who advertises for employment as an adjuster of such claims, and also includes any person who, for money, commission, or any other thing of value, solicits, investigates, or adjusts such claims on behalf of any such public adjuster.
[[Image here]]
(6) A public adjuster may not directly or indirectly through any other person or entity initiate contact or engage in face-to-face or telephonic solicitation or enter into a contract with any insured or claimant under an insurance policy until at least 48 hours after the occurrence of an event that may be the subject of a claim under the insurance policy unless contact is initiated by the insured or claimant.
[[Image here]]
The provisions of subsections (5)-(12) apply only to residential property insur- *90 anee policies and condominium association policies as defined in s. 718.111(11).
Kortum asserts that section 626.854(6) acts as a forty-eight-hour ban on all commercial speech from public adjusters to potential clients. The Department in turn asserts that section 626.854(6) does not actually regulate commercial speech. According to the Department, the statute only restricts how a public adjuster may contact the potential client during a forty-eight-hour period, not what a public adjuster may say to a potential client during that time. Specifically, the Department contends that the statute prohibits only in-person or telephonic solicitation and that because written communications are not initiated through “any other person or entity,” the statute does not prohibit public adjusters from distributing written documents, such as informational mailings, to potential claimants during the forty-eight-hour period. Neither party contends that the statute limits a public adjuster’s ability to engage in general advertising not targeted at a specific homeowner known to have experienced a recent loss.
The First District concluded that the plain language of section 626.854(6) “prohibits all public adjuster-initiated contact, whether electronic, written or oral” and declared the statute unconstitutional. Kortum, 54 So.3d at 1018. This Court “review[s] de novo a district court decision declaring a statute unconstitutional.” Fla. Dep’t of Children & Families v. F.L., 880 So.2d 602, 607 (Fla.2004).
“[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931)). “[W]ords or phrases in a statute must be construed in accordance with their common and ordinary meaning.” Donato v. Am. Tel. & Tel. Co., 767 So.2d 1146, 1154 (Fla.2000). “It is only if the statutory language is ambiguous that ‘the Court must resort to traditional rules of statutory construction to determine legislative intent.’ ” Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004) (quoting Palm Beach Cnty. Canvassing Bd. v. Harris, 772 So.2d 1273, 1282 (Fla.2000)). Likewise, the “Administrative construction of a statute, the legislative history of its enactment, and other extraneous matters are properly considered only in the construction of a statute of doubtful meaning.” Donato, 767 So.2d at 1153 (quoting Fla. State Racing Comm’n v. McLaughlin, 102 So.2d 574, 576-77 (Fla.1958)). In the instant case, we agree with the First District that the plain language of section 626.854(6) “prohibits all public adjuster-initiated contact, whether electronic, written or oral” and that the Department’s interpretation of the statute is untenable because it requires “the court to eliminate the ‘initiate contact’ prohibition inserted by the legislature.” Kortum, 54 So.3d at 1018.
Section 626.854(6) states that a public adjuster “may not directly or indirectly through any other person or entity initiate contact” with a potential claimant during the specified time frame. As noted above, the Legislature added the phrase “initiate contact” to the Task Force’s proposal when adopting section 626.854(6). This Court is bound to “interpret statutes as they are written and give effect to each word in the statute.” Fla. Dep’t of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001). Consequently, the Legislature’s insertion of the broad phase “initiate contact” causes us to conclude *91 that section 626.854(6) bans all public adjuster-initiated communication with a potential claimant during the forty-eight-hour period.
Contact means to “get in communication with,” to “make connection with,” or “to talk or confer with.” Webster’s Third New International Dictionary 490 (1993) (second definition). The definition of “contact” is not restricted to any particular type of communication, but rather encompasses both written and oral transmissions. The statute’s prohibition against initiating contact thus means that a public adjuster may not make any sort of communication to an identified claimant during the forty-eight-hour period. It is unreasonable to read the restriction on “initiat[ing] contact” “directly or indirectly through any other person or entity” to permit — as the Department urges — a public adjuster to initiate the dissemination of written materials to a claimant during the forty-eight-hour period.
The Department’s claim that the public adjuster-initiated contact and solicitation regulated by section 626.854(6) are conduct — not protected commercial speech — is unpersuasive. This argument is predicated on the strained reading of the statute advanced by the Department. With the rejection of that strained statutory reading, the argument collapses.
The Supreme Court has expressly held that solicitation in a business context is protected commercial speech. In Edenfield v. Fane, 507 U.S. 761, 764, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993), the Supreme Court reviewed a Florida regulation providing that a certified public accountant (CPA) “shall not by any direct, in-person, uninvited solicitation solicit an engagement to perform public accounting services ... where the engagement would be for a person or entity not already a client of [the CPA], unless such person or entity has invited such a communication.” (alteration in original) (quoting Fla. Admin. Code R. 21A-24.002(2)(c) (1992)). The Supreme Court stated that “it is clear that this type of personal solicitation is commercial expression to which the protections of the First Amendment apply.” Id. at 765, 113 S.Ct. 1792. The Supreme Court then reiterated that “even a communication that does no more than propose a commercial transaction is entitled to the coverage of the First Amendment.” Id. at 767, 113 S.Ct. 1792. The Department offers no reason why solicitation by a public adjuster would not be protected speech when solicitation by a CPA is “clear[ly] ... commercial expression to which the protections of the First Amendment applies].” Id. at 765, 113 S.Ct. 1792.
O’Brien likewise supports the conclusion that section 626.854(6) regulates commercial speech. In O’Brien, 391 U.S. at 375-76, 88 S.Ct. 1673, the Supreme Court distinguished nonexpressive conduct from protected speech in the context of reviewing a federal law prohibiting the knowing destruction of a selective service certificate. The Supreme Court rejected “the view that an apparently limitless variety of conduct can be labeled ‘speech’ whenever the person engaging in the conduct intends thereby to express an idea.” Id. at 376, 88 S.Ct. 1673. Instead, the Supreme Court limited the protections that accompany pure speech to conduct that is “necessarily expressive” and concluded that the statute regarding selective service certificates only incidentally affected speech. Id. at 385, 88 S.Ct. 1673. Unlike the destruction of a draft card, a public adjuster’s act of contacting or soliciting a potential customer is necessarily expressive. The purpose and intent of the public adjuster’s act of contacting the claimant is to inform the potential client of the services offered by public adjusters and to obtain the customer’s con *92 sent to a contract. There is no reason for a public adjuster — in his capacity as a public adjuster — to contact a claimant but to engage in communication about the commercial transaction of public adjusting.
Because section 626.854(6) regulates commercial speech — not merely conduct— the First District was correct in applying the test from Central Hudson to evaluate the constitutionality of the statute. The Department has failed to present any argument showing that the First District erred in concluding that the challenged restriction is more extensive than necessary to serve the State’s interests.
III. CONCLUSION
As explained above, the plain language of section 626.854(6), Florida Statutes (2008), prohibits all public adjuster-initiated contact with potential claimants during the forty-eight-hour period following a claim-producing event. Because this statute regulates commercial speech, the First District did not err in applying the four-prong test from Central Hudson. Accordingly, we affirm the First District’s decision and lift the stay that was imposed pursuant to Florida Rule of Appellate Procedure 9.310(b)(2).
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.