LUCK, J.
Two homeowners suffered water damage to their homes, and after being unable to collect under their insurance policies, they assigned their claims against their insurance company to a public adjuster. This case is about whether the insureds validly assigned their claims such that the public adjuster had standing to bring breach of insurance contract claims on their behalves. The trial court in each homeowner's case granted summary judgment in favor of the insurance company, finding that the assignments could not confer standing because they violated state law ( Florida Statutes section 626.854(11)(b) (2014) )[1] prohibiting public adjusters from entering into a contract that charged the homeowners more than twenty percent of the payments made on the insurance claims. We agree that one of the assignments, in case number 15-2320, violated the twenty percent cap, but find that there's a genuine issue of material fact whether the other assignment, in case number 16-87, violated the state statute. We, therefore, affirm the summary judgment in case number 15-2320, and reverse and remand in case number 16-87.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Case Number 15-2320: Ethel Matusow
Ethel Matusow's home suffered water damage. In November 2013, she reported the damage to Citizens Property Insurance Corporation, and Citizens denied the claim on December 12, 2013. Days later, *617 Matusow hired Gables Insurance Recovery, Inc. as a public adjuster "to appraise, advise and assist" with her claim against Citizens. The public adjusting contract allowed Gables Recovery to "retain on [Matusow's] behalf the professional services of appraisers, estimators, engineers and other experts reasonably needed to assist in this matter and to further [ ] pursue the claim and corresponding payments." For its efforts, the contract called for Gables Recovery to be paid "20% of the gross amount of the collectible loss or damage recovered."
Ultimately, Gables Recovery was unable to reach a settlement with Citizens. Matusow, then, entered into a second contract with Gables Recovery, assigning the company her entire claim. The assignment consisted of two documents: a single, signed page entitled "Assignment of Insurance Rights and Benefits"; and a detailed, three-page contract entitled "Professional Services Engagement Agreement," setting forth the terms of the assignment, including Gables Recovery's compensation for collecting on the claim. Both documents were signed on March 21, 2014.
Under the professional services agreement, Matusow "engage[d] the professional services" of Gables Recovery "for collection and pursuit" of the assigned insurance claim. The professional services agreement required Gables Recovery "to proceed with all efforts to recover any and all amounts due, owing and or payable, it deem[ed] necessary, including the filing of the claim in court." And the agreement required Matusow "to cooperate in providing all necessary documentation to facilitate the pursuit of recovery on the claim" and "to provide access to ... information, statements, testimony at or before trial proceedings in the effort toward recovery of the funds due, owing and/or payable to [Matusow]."
As to compensation, the agreement provided that Gables Recovery would "retain 20% of all amounts collected for the proceeds pertaining to the coverage set forth in the insurance policy." Gables Recovery was also "entitled to recover, collect, retain and otherwise [was] entitled to receive any attorney fees and costs under 627.428 or any other applicable provision of state or federal law entitling the prevailing party to attorney fees and costs."
Gables Recovery, as Matusow's assignee, demanded that Citizens pay $21,130.63 under the policy to fix the water damage in Matusow's home. When Citizens refused to pay, Gables Recovery sued for breach of the insurance policy. Citizens answered and asserted as an affirmative defense that Gables Recovery had no standing because the Matusow assignment violated section 626.854(11)(b) - the twenty percent statutory compensation cap for public adjusters.
Citizens then moved for summary judgment based on the assignment's purported violation of the statutory cap, and Florida Administrative Code Rule 69B-220.201(4)(d) (prohibiting public adjusters from entering contracts for compensation in excess of limits in section 626.854(11) ). Gables Recovery responded that: (1) summary judgment was premature because it had not completed discovery; (2) the statutory caps did not apply because it was not "receiving compensation for work done as a public adjuster," and, instead, it was acting "from its assigned ownership of a post loss insurance claim"; and (3) section 626.854 does not prohibit the assignment of insurance claims to a public adjuster or other person or entity.
The trial court granted Citizens' summary judgment motion, denied rehearing, and entered judgment in its favor. This appeal followed.
*618 Case Number 16-87: Christopher Difilippi
Like Matusow, Christopher Difilippi filed an insurance claim with Citizens when his house suffered water damage. The claim was reported in April 2013. Citizens assessed the loss at $22,352.03 and tendered $19,852.03. Still, on June 13, 2013, Difilippi hired Gables Recovery to adjust the claim for a ten percent fee. Other than the compensation amount, the contract was identical to the Matusow public adjuster contract.
Gables Recovery was unsuccessful in negotiating with Citizens, and just as Matusow did, he assigned his claim. The Difilippi assignment also consisted of two documents: the "Assignment of Insurance Rights and Benefits" executed on January 13, 2014; and the "Professional Services Engagement Agreement" executed on January 21, 2014. The two documents were identical to those signed by Matusow except for Difilippi's personal information, and the amount of compensation owed to Gables Recovery. Under the Difilippi agreement, Gables Recovery retained ten percent of any insurance proceeds recovered from Citizens, plus fees and costs.
Gables Recovery, as Difilippi's assignee, notified Citizens that the initial payment did not cover all the damage to Difilippi's home. When Citizens refused to pay the additional claim, Gables Recovery sued for breach of the insurance policy. Citizens answered and asserted as an affirmative defense that Gables Recovery had no standing because the Difilippi assignment violated section 626.854(11)(b), and Florida Administrative Code Rule 69B-220.201(4)(d).
Citizens moved for summary judgment on the same grounds. In response, Gables Recovery argued that its adjuster services had terminated by the time the assignment was executed; the statute did not prohibit the assignment of claims; and compensation under the assignment contract was less than the twenty percent statutory cap for payment of a claim to a public adjuster.
The trial court granted Citizens' summary judgment motion, and entered final judgment in favor of Citizens. Because the issues raised in the two cases are the same, we consolidated the Matusow and Difilippi appeals.
STANDARD OF REVIEW
"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). We review orders granting summary judgment - and determinations that a contract is unenforceable and a party does not have standing - de novo. Id.; Citibank, N.A. v. Olsak, 208 So.3d 227, 229 (Fla. 3d DCA 2016) ("Generally, the determination of whether a plaintiff has standing is a legal issue subject to de novo appellate review."); A.I.C. Trading Corp. v. Susman, 40 So.3d 769, 772 (Fla. 3d DCA 2010) ("Our review regarding contract interpretation and the threshold question of enforceability is de novo.").
DISCUSSION
Because Gables Recovery was not a party to - or a third party beneficiary of - the insurance contracts between the insureds and Citizens, there is no dispute that the only way the company could have standing to sue on behalf of the homeowners was if the assignments were valid. If the assignments were not valid, then as a non-party to the insurance contracts Gables Recovery would have no right to sue. See White v. Exch. Corp., 167 So.2d 324, 326 (Fla. 3d DCA 1964) ("It is elementary that a person not a party to nor in privy with a contract does not have the right to sue for *619 its breach."). The issue, then, is whether the Matusow and Difilippi assignments were valid to give Gables Recovery standing to bring the breach of insurance contract claims on their behalf.
"In general, contracts are assignable unless forbidden by the terms of the contract, or an assignment would violate some rule of public policy or some statute, or unless they involve a question of personal trust and confidence." Hall v. O'Neil Turpentine Co., 56 Fla. 324, 47 So. 609, 612 (1908) (emphasis added); see also L.V. McClendon Kennels, Inc. v. Inv. Corp. of S. Fla., 490 So.2d 1374, 1375 (Fla. 3d DCA 1986) ("Generally, all contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment."); Kitsos v. Stanford, 291 So.2d 632, 634 (Fla. 3d DCA 1974) ("In general, contracts are assignable unless forbidden by the terms of the contract, or unless the assignment would violate some rule of public policy or statute, or unless the terms of the contract are such as to show reliance on the personal credit of the purchaser."). Because the agreements violated state law and public policy, the trial courts concluded, the assignments were invalid to give Gables Recovery standing to sue on behalf of Matusow and Difilippi.
Gables Recovery contends that the trial courts got it wrong for two reasons. First, it says, the twenty percent cap in section 626.854(11)(b) did not apply because it only applies to public adjusters and Gables Recovery was no longer Matusow and Difilippi's adjuster when it filed the lawsuits. Second, Gables Recovery argues, its agreements with Matusow and Difilippi complied with section 626.854(11)(b).
We will discuss each of these issues, but before we do, we pause to address the argument in Citizens' answer brief that, in addition to the twenty percent cap in section 626.854(11)(b), the Matusow and Difilippi agreements violated a slew of other state statutes and administrative regulations.[2] Citizens did not raise *620 these other statutory and regulatory provisions before the trial court in its summary judgment motion, and therefore, without fundamental error, we do not address them for the first time on appeal. See Dober v. Worrell, 401 So.2d 1322, 1323-24 (Fla. 1981) ("[A]n appellate court will not consider issues not presented to the trial judge either on appeal from an order of dismissal, or on appeal from final judgment on the merits. We now add to this list and hold it inappropriate for a party to raise an issue for the first time on appeal from summary judgment." (citations omitted) ); Chiu v. Wells Fargo Bank, N.A., 242 So.3d 461, 463 (Fla. 3d DCA 2018) ("Generally, in order to raise an issue on appeal, it must be presented to the trial court, and the specific legal argument or ground to be argued on appeal must be part of that presentation. (quotation omitted) ); Burns v. Consol. Am. Ins. Co., 359 So.2d 1203, 1206 (Fla. 3d DCA 1978) ("Consolidated correctly points out that this issue was raised for the first time on appeal. Since plaintiff never raised in the trial court the question of whether Consolidated's motion complied with the requirements of the rule, and never objected to the entry of summary judgment on this ground, any error pertinent thereto was waived.").
Was Gables Recovery acting as a public adjuster?
Gables Recovery first argues that the Matusow and Difilippi agreements did not violate the twenty percent cap because the company was no longer acting as the homeowners' public adjuster when the lawsuits were filed. We disagree.
The legislature has defined a "public adjuster" as:
any person, except a duly licensed attorney at law as exempted under s. 626.860, who, for money, commission, or any other thing of value, prepares, completes, or files an insurance claim form for an insured or third-party claimant or who, for money, commission, or any other thing of value, acts on behalf of, or aids an insured or third-party claimant in negotiating for or effecting the settlement of a claim or claims for loss or damage covered by an insurance contract or who advertises for employment as an adjuster of such claims. The term also includes any person who, for money, commission, or any other thing of value, solicits, investigates, or adjusts such claims on behalf of a public adjuster.
§ 626.854(1), Fla. Stat. (emphasis added).
Here, the undisputed evidence was that the Matusow and Difilippi agreements met the underlined part of the definition. The agreements "engage[d] the professional services of [Gables Recovery] for collection and pursuit" of payment on their post-loss claims. They required Gables Recovery "to proceed with all efforts to recover any and all amounts due, owing and or payable, it deem[ed] necessary, including the filing of the claim in court"; and required Matusow and Difilippi "to cooperate in providing all *621 necessary documentation to facilitate the pursuit of recovery on the claim" and provide "access to ... information, statements, testimony at or before trial proceedings in the effort toward recovery of the funds due, owing and/or payable."
The dissenting opinion says that section 626.854(1)"does not address the point at which the claim becomes a lawsuit," suggesting that Gables Recovery was not a public adjuster at the point the lawsuit was filed. "Seeking a judgment for money damages in a court," the dissenting opinion explains, "is something beyond an attempt to obtain the 'settlement' of a claim."
Gables Recovery agreed to do much more than simply file and prosecute a lawsuit in exchange for a commission. The agreements gave Gables Recovery "full discretion and authority to proceed with all efforts to recover any and all amounts due, owing, and or payable, it deem[ed] necessary including the filing of the claim in court." Gables Recovery agreed to use "all efforts" to recover money for Matusow and Difilippi. "[A]ll efforts" included litigation, but it also included continued negotiation and settlement with Citizens.
We know that Gables Recovery did more than "commence the underlying lawsuits" after it entered into the assignment agreements with Matusow and Difilippi. For example, Gables Recovery's efforts on Matusow's behalf began on March 21, 2014, when it signed the agreement. Those efforts continued for months until the lawsuit was filed. Gables Recovery's executive director swore that after the assignments were executed the company "pursued the subject claim by demanding that the insurer make payment for the loss." These efforts were aimed at negotiating and settling Matusow's claim. Based on the agreements and the affidavit of the company representative, there was no genuine dispute that Gables Recovery was acting as Matusow and Difilippi's "public adjuster" (as defined in section 626.854(1) ).
Was Gables Recovery a duly licensed attorney?
Section 626.854(1) excepts attorneys from the definition of public "adjuster" - and from the requirements of section 626.854, including the twenty percent cap - if the attorney is "a duly licensed attorney at law as exempted under section 626.860." § 626.854(1), Fla. Stat. Section 626.860 explains that "[a]ttorneys at law duly licensed to practice law in the courts of this state, and in good standing with The Florida Bar, shall not be required to be licensed under the provisions of this code to authorize them to adjust or participate in the adjustment of any claim, loss, or damage arising under policies or contracts of insurance." Id. § 626.860.
Gables Recovery was licensed as a section 626.854 public adjuster, and not a duly licensed attorney. Gables Recovery's executive director swore that the company was "a duly licensed public adjusting entity in the State of Florida as per [ section] 626.854 and provides public adjusting services to insureds under residential and commercial insurance policies." Its executive director - the one that signed the Matusow and Difilippi agreements agreement for Gables Recovery - was "also the principal licensed insurance public adjuster." The company, in other words, agreed it was a section 626.854 public adjuster. As a section 626.854 public adjuster, Gables Recovery was subject to the twenty percent cap in subsection (11)(b).
Did the Matusow and Difilippi agreements violate section 626.854(11)(b) ?
Gables Recovery next argues that the trial court erred because there was a genuine issue of material fact regarding whether its agreements with Matusow *622 and Difilippi violated the twenty percent cap. There is no dispute as to the Matusow agreement but there is as to Difilippi's.
"In 2008, the Florida Legislature amended section 626.854 of the Florida Statutes to include new regulations on public adjusters doing business in Florida." Sink v. E. Coast Pub. Adjusters, Inc., 40 So.3d 910, 912 (Fla. 3d DCA 2010). Among the provisions passed was section 626.854(11)(b), "capping the maximum fee that may be charged by a public adjuster." Id. Section 626.854(11)(b) specifically provides:
(b) A public adjuster may not charge, agree to, or accept from any source compensation, payment, commission, fee, or any other thing of value in excess of:
...
2. Twenty percent of the amount of insurance claim payments made by the insurer for claims that are not based on events that are the subject of a declaration of a state of emergency by the Governor.
§ 626.854(11)(b), Fla. Stat. The state administrative code, likewise, provides:
No public adjuster who represents a claimant with regard to a particular claim shall enter into any contract, agreement or other arrangement with any person, which would allow the public adjuster to accept an amount that would exceed the limitation of the public adjuster's compensation imposed by Section 626.854(11), F.S.
§ 69B-220.201(4)(d), Fla. Admin. Code.
Under the Matusow agreement, the homeowner agreed to pay Gables Recovery twenty percent of any recovered insurance money plus "any attorney fees and costs under 627.428 or any other applicable provision of state or federal law entitling the prevailing party to attorney fees and costs." This violated section 626.854 because "[a] public adjuster may not charge, agree to, or accept from any source compensation, payment, commission, fee, or any other thing of value in excess of ... [t]wenty percent of the amount of insurance claim payments made by the insurer." § 626.854(11)(b) 2., Fla. Stat. The Matusow agreement would have her pay twenty percent of what was recovered in addition to prevailing party attorney's fees and costs. Having Matusow "agree to" pay the attorney's fees and costs in addition to the twenty percent was a "thing of value" in excess of the twenty percent cap, which is prohibited by the statute.
The Difilippi agreement, however, compensated Gables Recovery ten percent of any insurance proceeds and any applicable attorney fees and costs. The Difilippi agreement, on its face, does not violate section 626.854(11)(b). We don't know at this point in the litigation how much Gables Recovery will be awarded in attorney's fees and costs if it prevails in the Difilippi litigation. Together with the ten percent, it could be more than twenty percent of what is recovered by the litigation. Or, it could be less than twenty percent. Because we don't know, there is a genuine issue of material fact that must be resolved before summary judgment may be granted based on a violation of the twenty percent cap.
The dissenting opinion criticizes us for "assum[ing] in this case that the Legislature would include attorney's fees in public adjuster compensation," and contends that any future attorney's fees are to be paid to the attorney and not the public adjuster. We haven't assumed anything.
The legislature prohibited public adjusters from agreeing to not only "compensation" in excess of twenty percent, but also "payment[s], commission[s], fee[s], or other thing[s] of value." Id. (emphasis added).
*623 Attorney's fees, by definition, are a "fee," and are certainly a "payment" and "thing of value" to the company receiving them. The Matusow and Difilippi agreements call for Gables Recovery to receive "attorney fees" in excess of the twenty percent contingency. Having its attorney's fees paid, in addition to the twenty percent contingency fee, is exactly what is covered in section 626.854(11)(b).[3]
The dissenting opinion is also wrong that the attorney's fees are being paid to the attorneys. The Matusow and Difilippi agreements are clear that "GIR [defined as Gables Recovery in the agreement] is entitled to recover, collect, retain, and otherwise is entitled to receive any attorney fees and costs." The attorney fees under the agreements are not being paid to attorneys. Only Gables Recovery is "entitled to ... receive" this money under the contract. Together with the twenty percent contingency, Gables Recovery agreed to be paid in excess of what was allowed under section 626.854(11)(b).
The dissenting opinion
There are three other points in the dissenting opinion that we wish to address. The dissenting opinion says that: (a) we have "disregarded the contractual promises in Gables Recovery's contracts with its insureds to forego compensation in excess of the statutory limitations"; (b) we have "applied the statute to compensation that has not been paid, [and] may never be paid"; and (c) "[w]hen the Legislature has intended to invalidate (and render entirely unenforceable) contracts between private, consenting parties for the protection of the public, it has been quite clear." We address each of these arguments below.
(a) Contractual promise to forgo compensation
The dissenting opinion says that there are "contractual promises in Gables Recovery's contracts with its insured to forgo compensation in excess of the statutory limits." There are no such promises in the Matusow and Difilippi agreements. The agreements provide that "[t]he conduct of [Gables Recovery] in the pursuit of due and outstanding amounts under the pertinent insurance policy for the claim referenced herein shall be in compliance with all applicable Federal, State and Local laws and shall be courteous and businesslike." This language does not "forgo compensation." And it cannot overcome the agreement that Gables Recovery "shall retain 20% of all amounts collected," and "is entitled to recover, collect, retain and otherwise is entitled to receive any attorney fees and costs."
Quoting from Hunt v. First National Bank of Tampa, 381 So.2d 1194 (Fla. 2d DCA 1980), the dissenting opinion explains that "whenever possible a contract *624 should receive such construction as will uphold it rather than render it invalid." Id. at 1197. The dissenting opinion says the Matusow agreement should be given this construction, and read as limiting compensation to twenty percent, because "the contracts in these cases specified that Gables Recovery was to comply with all applicable state laws." The language from Hunt, however, is a rule of construction. We use these rules, or "presumptions or guidelines," as Hunt calls them, to construe "latent ambiguit[ies]" in a contract. Id. at 1197. As Hunt explained, the courts "are frequently called upon to determine what the parties would have included in their contract had they anticipated an occurrence which they in fact overlooked." Id. (footnote omitted). But "[i]f a contract is clear, complete and unambiguous, there is no need for judicial construction." Id.
Here, the Matusow agreement was clear and unambiguous about Gables Recovery's compensation: the company would "retain 20% of all amounts collected" and was "entitled to recover, collect, retain ... any attorney's fees and costs." There were no latent ambiguities in this language, and we don't resort to the rules of construction where there aren't any. See Burns v. Barfield, 732 So.2d 1202, 1205 (Fla. 4th DCA 1999) ("Where the language of a contract is clear and unambiguous, there is no need to resort to rules of contract construction or judicial interpretation." (quotation omitted) ). Just as a contract to sell heroin cannot be saved by a codicil in paragraph twenty-three that the parties will pursue the deal in compliance with all state and federal laws, the compliance language cannot save the excessive compensation in the Matusow agreement.
(b) Actual compensation
The dissenting opinion next argues that because Gables Recovery has not been paid, we cannot know, for summary judgment purposes, whether its actual compensation will exceed the twenty percent cap. But section 626.854(11)(b) prohibits more than just accepting in excess of twenty percent. The statute says that a "public adjuster may not charge, agree to, or accept ... any ... thing of value in excess of ... twenty percent of the amount of the insurance claim payments made by the insurer." § 626.854(11)(b), Fla. Stat. (emphasis added). The twenty percent cap prohibits public adjusters from even "agree[ing] to" more compensation than is allowed by law. We don't have to wait for Gables Recovery to "accept" money, as the dissenting opinion suggests, to know the Matusow agreement violates section 626.854(11)(b) because Gables Recovery "agree[d] to" be paid more than twenty percent of the insurance claim.
(c) No legislative intent to invalidate contracts
The dissenting opinion, finally, argues that a contract that violates the law is invalid only where made so by the legislature. However, the Florida Supreme Court has explained that "an agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void." Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc., 66 So.2d 818, 821 (Fla. 1953), cited in Palm Bay Towers Corp. v. Brooks, 466 So.2d 1071, 1074 (Fla. 3d DCA 1984) (en banc). We have consistently applied this rule to invalidate contracts that violate the law.
(1) In King v. Young, Berkman, Berman & Karpf, P.A., 709 So.2d 572 (Fla. 3d DCA 1998), the law firm represented the *625 appellant in a divorce case. Id. at 573. The fee agreement between them called for the appellant to pay the law firm a retainer, an hourly rate, and also included this clause: "In the event this matter is settled, or the matter is concluded by the entry of a Final Judgment of Dissolution of Marriage (at the trial level), an additional and final fee will be determined as due us from you, taking into consideration the results achieved and the complexity of the matter. This 'bonus' fee shall be fair and reasonable." Id. (quoting fee agreement) (emphasis omitted). We held that the fee agreement was void because it violated the rule that "[a] lawyer shall not enter into an arrangement for, charge or collect ... any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or a property settlement in lieu thereof." Id. (quoting bar rule 4-1.5(f)(3) ). "The fee agreement between the firm and [the appellant]," we said, "expressly made a portion of the fee to be charged by the firm contingent upon the results obtained. Thus, the provision [was] void and unenforceable." Id. at 574.
(2) In Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775 (Fla. 3d DCA 1986), the surviving spouse of a wrongful death plaintiff hired attorney Gerson after Gerson's investigator contacted the spouse and had her sign a retainer agreement. Id. at 776. After six months of litigation, the spouse discharged Gerson and hired another law firm to represent her in the wrongful death action. Id. The successor law firm settled the case but not before Gerson filed a lien on the settlement proceeds. Id. After the settlement, Gerson sought to enforce his lien. Id. In response, the successor law firm answered that Gerson's retainer agreement was void because it violated the state statute prohibiting the solicitation of legal services: "It shall be unlawful for any person or his agent, employee or any person acting on his behalf, to solicit or procure through solicitation either directly or indirectly legal business, or to solicit or procure through solicitation a retainer, written or oral, or any agreement authorizing an attorney to perform or render legal service." Id. at 777 (quoting § 877.02(1), Fla. Stat. (1981) ). We concluded that the evidence, in the light most favorable to Gerson, showed he "unlawfully solicited the legal business." Id."A violation of the statute," we said, "result[ed] in the contract being void as a matter of public policy and thus incapable of supporting the charging lien." Id. [4]
(3) In Brooks, condominium owners sued the developers who still owned a number of units in the building because the developers failed to pay the assessments on the units they owned. 466 So.2d at 1071. The developers claimed they did not owe the assessments because the condominium declaration said that "[s]hould the developer or association be the owner of any units, no assessment therefore [ ] shall be made to the developer or association so long as it is the owner." Id. at 1072 (quoting the declaration) (emphasis omitted). Yet, the state condominium statute provided "a unit owner, regardless of how title is acquired, ... shall be liable for all assessments coming due while he is the owner of the unit." Id. at 1073 (quoting § 711.15, Fla. Stat. (1971) ) (omission in original; emphasis omitted). The en banc court affirmed the summary judgment in favor of the condominium owners based, in part, on "the general rule concerning the *626 invalidity of a private agreement which contravenes a governing statute." Id. at 1074.
* * * *
In none of these cases did the legislature provide that a contract that violated the law was invalid. Yet, in each case, the court held that the contract was invalid. No matter, the dissenting opinion says, because "the Legislature specified the form of discipline to which an errant public adjuster would be subject - section 626.8698 [allowing for the revocation of a public adjuster's license and imposition of a fine] ... - while no such legislative guidance applied to the contractual provisions in the cases cited by the majority." But in Gerson the legislature specified the form of discipline - a misdemeanor conviction - and still the court invalidated the contract because it violated the anti-solicitation statute. And in King, the bar specified the form of discipline - suspension; disbarment - and still the court invalidated the contract because it violated the contingency fee rule.
The dissenting opinion tries to distinguish Gerson and King because the anti-solicitation rule is a criminal penalty, and the contingency fee rule in King was a bar rule, but the dissenting opinion never explains why this makes a difference. Why would contract invalidation be different because the legislature's remedy was jail (as in Gerson ) or a fine (as here)? Why would contract invalidation be different because the law that is being violated was enacted by the bar (as in King ) or the legislature (as here)?
There is no difference. The Florida Supreme Court has been clear that "an agreement that is violative of a provision of a constitution or a valid statute, or an agreement which cannot be performed without violating such a constitutional or statutory provision, is illegal and void." Local No. 234, 66 So.2d at 821. No carve outs for criminal statute or bar rules.
The dissenting opinion ends with the observation that "the Florida Supreme Court has reaffirmed a rule of restraint and caution in invalidating private contracts on grounds of public policy," quoting from City of Largo v. AHF-Bay Fund. LLC, 215 So.3d 10 (Fla. 2017). This is true, of course, but the observation is inapplicable here for two reasons.
First, this is not a void-as-against-public-policy case. Courts only use the void-as-against-public-policy doctrine where the contract does not violate a state statute or constitutional provision. City of Largo- the case relied on by the dissenting opinion - is a good example. There, because "there [was] no statutory or constitutional provision that expressly prohibit[ed] the exaction of ad valorem taxes on nonprofit entities," the Florida Supreme Court said it "would only find the agreement void in the event that it [was] clearly injurious to the public good or contravenes some established interest of society." Id. at 15 (emphasis added; quotations omitted).
Here, unlike in City of Largo, the Matusow agreement did violate a state statutory provision so there is no need to rely on the void-as-against-public-policy doctrine. Where a contract violates state law, the Florida Supreme Court has said that such a contract is void. See Citizens Nat'l Bank & Tr. Co. v. Stockwell, 675 So.2d 584, 587 (Fla. 1996) ("This Court has recognized that certain otherwise valid contracts can be void as against public policy or in violation of a statute, but only where the facts clearly establish a conflict." (emphasis added) ).
The second reason City of Largo does not apply is that we have not invalidated the Matusow and Difilippi contracts. (The *627 dissenting opinion is peppered with references to "invalidation of a private contract" and "judicially-ordered invalidity." This is wrong.) The issue in this case is whether Matusow and Difilippi validly assigned their insurance claims to Gables Recovery, giving the company standing to sue. The trial courts found that Gables Recovery did not have standing because the insureds assigned their insurance claims in violation of state law. We have affirmed that finding as to the Matusow claim - no more, and no less. All that we hold today - all that we can hold - is that Matusow violated state law when she assigned her insurance claim. Nothing in this opinion invalidates the insurance contracts between Citizens and their insureds, or the professional services agreements between the insureds and their public adjuster, Gables Recovery. Now, as before, Citizens is still Matusow's insurer and Gables Recovery can represent her as her public adjustor.
CONCLUSION
Florida, as of now, allows for the assignment of claims on an insurance policy. See One Call Prop. Servs. Inc. v. Sec. First Ins. Co., 165 So.3d 749, 752-53 (Fla. 4th DCA 2015) ("A chose in action arising out of contract is assignable and may be sued upon and recovered by the assignee in his own name and right. A claim on an insurance policy is a chose in action and is assignable as such. Where there is no provision forbidding assignment, an insurance policy may be assigned as any other chose in action. (quotations and footnote omitted) ). But for at least 110 years, assignments that violated state statutes have been invalid and unenforceable. See Hall, 47 So. at 612.
The Matusow assignment violated a state statute, section 626.854(11)(b), because it agreed to give Gables Recovery more than twenty percent of what is collected on the insurance claim. Thus, Matusow did not validly assign her claim, and without the assignment, Gables Recovery did not have standing to sue Citizens. We affirm the summary judgment in case number 15-2320.
There's a genuine issue of material fact on whether the Difilippi assignment violated section 626.854(11)(b). Because we cannot say on this record whether the assignment was invalid, we reverse summary judgment in case number 16-87 and remand for further proceedings.
Affirmed in case number 15-2320. Reversed and remanded for further proceedings in case number 16-87.
ROTHENBERG, C.J., concurs.
SALTER, J. (dissenting in part and concurring in part).
I respectfully dissent from the majority's decision to affirm the trial court's final summary judgment for Citizens in consolidated Case No. 3D15-2320 (Ethel Matusow is the insured), and concur (though on different grounds) regarding the majority's decision to reverse the trial court's final summary judgment for Citizens in Case No. 3D16-87 (Christopher Difilippi is the insured). The difference in analysis and outcomes turns largely on my view that Gables Recovery never exceeded the limits on compensation imposed by the Legislature in section 626.854(11)(b), Florida Statutes (2014),[5] in Mrs. Matusow's case.
The trial court and the majority have disregarded the contractual promises in Gables Recovery's contracts with its insureds to forgo compensation in excess of *628 the statutory limitations. Instead, the majority has applied the statute to compensation that has not been paid, may never be paid, and if paid (at some uncertain future point) will be subject to contractual restrictions consistent with the statute.
The majority also has disregarded the express exemption from the statute applicable to Florida-licensed attorneys ( section 626.860, Florida Statutes (2014) ); the majority assumes that any future compensation paid to the attorney of record for Mrs. Matusow (if she were to prevail) must be included as "public adjuster" income. Faithful adherence to the text of the statute does not support such a result-indeed, the statute is silent as to the inclusion of attorney's fees in "compensation." The text also specifies that an agreement purporting to exceed the "limits on compensation" in section 626.854(11) is "punishable as provided under s. 626.8698," a statute imposing a potential fine and the suspension or revocation of the public adjuster's license for a violation.
The text does not invoke public policy to render the underlying Assignments and Professional Services Agreement unenforceable. The cases cited by the majority as a justification for doing what the legislature did not do-making the private contracts unenforceable in the case of a purported facial violation-disregard the stringent limitations on the invalidation of private contracts on grounds of "public policy."
Because the record is concededly devoid of any actual payments in excess of the statutory limitation, the trial court's decision to grant final summary judgment to Citizens is premature and unsupported by the record in each case. That said, I fully concur with two of the majority's conclusions: (a) the rejection of Citizens' argument that the post-loss assignments by the insureds to Gables Recovery were unenforceable per se as a matter of public policy (irrespective of the compensation issue);[6] and (b) the refusal to address an assortment of statutory and regulatory arguments raised here for the first time, and not raised in Citizens' motions for summary judgment in the trial court.
I will first highlight parts of the records before us in these cases, and then apply section 626.854(11)(b) and Florida Administrative Code Rule 69B-220.201(4)(d) to the contracts and facts in those records. Following that analysis, I will respond to the majority's departures from the applicable statutory text and appellate decisions.
I. The Matusow Claim and Assignment
In circuit court case number 14-12500 and our appeal in case number 3D15-2320, Mr. and Mrs. Matusow reported a claimed homeowner's policy loss to Citizens in November 2013. Citizens denied the claim, contending that the reported damage was excluded from coverage by the policy. In December 2013, Mrs. Matusow hired Gables Recovery to "appraise, advise and assist with respect to the loss," as a public adjuster. The written agreement for those services specified that Gables Recovery's compensation would be twenty percent of the gross amount of the collectible loss or damage recovered, "except that for losses arising out of an occurrence declaration of an emergency [sic] for such occurrence which is subject to a statutory percentage,"[7] Gables Recovery would not be authorized *629 to settle the claim "unless the terms and conditions are first approved by the insured either orally or in writing."
Citizens and the Matusows did not resolve the claim over the next two months, at which point (March 2014) Mrs. Matusow signed a single-page "assignment of insurance rights and benefits" (the "Assignment") in favor of Gables Recovery. On the same day, Mrs. Matusow and Gables Recovery executed a three-page "Professional Services Engagement Agreement 'Protecting and Maximizing Your Residential and/or Commercial Property Insurance Benefits' " (the "Professional Services Agreement"). The Assignment assigned all Mrs. Matusow's "insurance rights, benefits, proceeds and any causes of action under any applicable insurance policies for the premises identified herein, to [Gables Recovery]," with specific reference to the Citizens insurance policy and the loss allegedly suffered November 22, 2013, at the Matusow residence.
Under the companion Professional Services Agreement, 16 numbered provisions identified the parties, the residence, Mrs. Matusow's contact information, the Citizens insurance policy, and the date and estimate of loss. A further 14 numbered provisions described the services to be provided by Gables Recovery and the compensation payable for those services.
Gables Recovery represented that its conduct in pursuing amounts due under the Citizens policy "shall be in compliance with all applicable Federal, State and Local laws." Compensation was to be "on a contingent fee basis" equal to twenty percent "of all amounts collected for the proceeds pertaining to the coverage set forth in the insurance policy." Gables Recovery was also entitled to receive "any attorney fees and costs under 627.428 [sic] or any other applicable provision of state or federal law entitling the prevailing party to attorney fees and costs." Importantly, paragraph 26 of the Professional Services Agreement specified that all insurance policy sums received by Gables Recovery were to be remitted to Client (Mrs. Matusow), less Gables Recovery's fee described in the previous sections of the Professional Services Agreement.
Attorney's fees would be payable (a) only if Mrs. Matusow's claim prevailed, (b) only to the extent of an application duly made by one or more licensed Florida attorneys (exempt by statute from the public adjuster provisions), and (c) subject to restrictions on the distribution of such fees to non-lawyers.[8]
In May 2014, Gables Recovery (as Mrs. Matusow's assignee) commenced its circuit court lawsuit against Citizens for breach of contract. The complaint was signed by a Florida-licensed attorney as general counsel of Gables Recovery (and with the same address and telephone number as Gables Recovery used on its letterhead in communications with Citizens and Mrs. Matusow).
In May 2015, Citizens moved for final summary judgment on the grounds that Gables Recovery "lacks standing to sue *630 Citizens" and "is prohibited from obtaining a full assignment of the insured's claim pursuant to Florida Statute section 626.854(11)(b) and Florida Administrative Code section [sic] 69B-220.201(4)(d)." Citizens argued that, despite the twenty percent compensation provision of the December 2013 public adjuster agreement, Mrs. Matusow's Assignment "purportedly assigns 100% of Ms. Matusow's insurance claim proceeds to [Gables Recovery]," thereby violating the statute and administrative rule and invalidating the Assignment.
Gables Recovery filed a memorandum in opposition to Citizens' motion based on: (1) the fact that Citizens had not raised its lack of standing defense in its original answer and affirmative defenses (Citizens moved to amend to add that defense, but leave had not been granted at that point); (2) discovery was in process and incomplete; and (3) an argument that section 626.854(11)(b) does not apply to post-loss assignment agreements after a public adjuster has completed its specified services as public adjuster.
The trial court granted the motion for summary judgment, and Gables Recovery filed a motion for rehearing. Gables Recovery filed a supplemental affidavit and a copy of the March 2014 Professional Services Agreement referenced in the Assignment. The court denied the motion for rehearing, and this appeal followed.
II. The Difilippi Claim and Assignment
The facts and procedural history in the second of these consolidated cases, circuit court case number 14-20479 and the appeal in case number 3D16-87, are substantially similar to those recited above. The homeowner, Christopher Difilippi, reported a loss to Citizens regarding water damage to his home in April 2013. Following Citizens' refusal to pay the claimed loss, Mr. Difilippi executed an Assignment of rights and proceeds relating to the claim to Gables Recovery in January 2014 (the form is identical to the Assignment in Ms. Matusow's case, except for the obvious difference in assignor, date of claim, identification of residence, and Citizens policy number).
After further communications failed to resolve the claim, in August 2014 Gables Recovery (as Mr. Difilippi's assignee) commenced its circuit court lawsuit against Citizens for breach of contract. As in Ms. Matusow's case, Gables Recovery's complaint was signed by a Florida-licensed attorney as general counsel of Gables Recovery (and with the same address and telephone number as Gables Recovery used on its letterhead in communications with Citizens and Mr. Difilippi).
In this case, however, Citizens filed a motion for final summary judgment and kept the trial judge apprised of the rulings (by a different judge) involving the same issues-standing and validity of the Assignment-in the earlier case involving Mrs. Matusow's claim. In opposition, Gables Recovery filed an affidavit and copies of (1) its initial public adjuster services agreement with Mr. Difilippi (June 2013) providing for compensation of ten percent[9] of "the gross amount of the collectible loss or damage recovered," and (2) the more detailed Professional Services Agreement between Mr. Difilippi and Gables Recovery signed in January 2014. The Professional Services Agreement limited compensation to a contingent fee of ten percent of "all *631 amounts collected for the proceeds pertaining to the coverage set forth in the insurance policy" and recovery of attorney's fees and costs, if awarded. In a form nearly identical to the Professional Services Agreement signed by Mrs. Matusow, Gables Recovery agreed that its conduct in prosecution of the insurance claim would be in compliance "with all applicable Federal, State and Local laws," and that proceeds recovered by Gables Recovery would be "remitted to [Mr. Difilippi], less [Gables Recovery's] fee."
Nevertheless, apparently persuaded that the assignment of all proceeds by Mr. Difilippi amounted to a fee prohibited by section 626.854(11), as concluded by the trial judge in Mrs. Matusow's case, in January 2016 the trial court granted Citizens' motion for final summary judgment and entered a final judgment in Citizens' favor. Gables Recovery's appeal followed.
III. Analysis
A. Standard of Review
Our standard of review for the final summary judgments in each of the consolidated cases is de novo. Moore v. Morris, 475 So.2d 666 (Fla. 1985). We "must construe all the evidence, and draw every possible inference therefrom, in a light most favorable to the non-moving party." JVN Holdings, Inc. v. Am. Const. & Repairs, LLC, 185 So.3d 599 (Fla. 3d DCA 2016). The de novo standard also applies to our interpretation of (a) the statute at issue in these cases, Fla. Dep't of Children & Family Servs. v. P.E., 14 So.3d 228, 234 (Fla. 2009) ("Legislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning."), and (b) the Assignments and Professional Services Agreements between Gables Recovery and its assignors/insureds, Mrs. Matusow and Mr. Difilippi, A.I.C. Trading Corp. v. Susman, 40 So.3d 769 (Fla. 3d DCA 2010).
Regarding the contractual agreements between the insureds and Gables Recovery, "whenever possible a contract should receive such construction as will uphold it rather than render it invalid." Hunt v. First Nat'l Bank of Tampa, 381 So.2d 1194, 1197 (Fla. 2d DCA 1980). When the contracts in these cases specified that Gables Recovery was to comply with all applicable state laws, the Florida statute limiting compensation should be applied to limit compensation if and when claimed, not preemptively invoked to bar enforcement of the contracts altogether.
Responding to the majority's critique that the public adjuster statute is clear and unambiguous, obviating any need to apply a canon of construction, I respectfully disagree. The Legislature expressly exempted licensed Florida attorneys from the public adjuster statutes, yet the majority has assumed in this case that the Legislature would include attorney's fees in public adjuster compensation. The majority resolves this omission in favor of the invalidation of a private contract.
B. The Public Adjuster Statutes and Rule
Focusing, then, on the statute and administrative rule relied upon by Citizens and the trial judges as a basis for invalidating the Assignments by the insureds to Gables Recovery, section 626.854, entitled " 'Public adjuster' defined; prohibitions," begins, "The Legislature finds that it is necessary for the protection of the public to regulate public insurance adjusters and to prevent the unauthorized practice of law." Subsection (1) of the statute defines a "public adjuster"[10] as:
*632 any person, except a duly licensed attorney at law as exempted under s. 626.860 , who, for money, commission, or any other thing of value, prepares, completes, or files an insurance claim form for an insured or third-party claimant or who, for money, commission, or any other thing of value, acts on behalf of, or aids an insured or third-party claimant in negotiating for or effecting the settlement of a claim or claims for loss or damage covered by an insurance contract or who advertises for employment as an adjuster of such claims. The term also includes any person who, for money, commission, or any other thing of value, solicits, investigates, or adjusts such claims on behalf of a public adjuster.
(Emphasis provided).
Subsection (3) of the statute prohibits a public adjuster from giving legal advice or acting on behalf of, or aiding, any person "in negotiating or settling a claim relating to bodily injury, death, or noneconomic damages." Of particular pertinence in these appeals, subsection (11) of the statute regulates the compensation that may be charged and collected by a licensed public adjuster:
(11)(a) If a public adjuster enters into a contract with an insured or claimant to reopen a claim or file a supplemental claim that seeks additional payments for a claim that has been previously paid in part or in full or settled by the insurer, the public adjuster may not charge, agree to, or accept from any source compensation, payment, commission, fee, or any other thing of value based on a previous settlement or previous claim payments by the insurer for the same cause of loss. The charge, compensation, payment, commission, fee, or any other thing of value must be based only on the claim payments or settlement obtained through the work of the public adjuster after entering into the contract with the insured or claimant. Compensation for the reopened or supplemental claim may not exceed 20 percent of the reopened or supplemental claim payment. In no event shall the contracts described in this paragraph exceed the limitations in paragraph (b).
(b) A public adjuster may not charge, agree to, or accept from any source compensation, payment, commission, fee, or any other thing of value in excess of:
1. Ten percent of the amount of insurance claim payments made by the insurer for claims based on events that are the subject of a declaration of a state of emergency by the Governor. This provision applies to claims made during the year after the declaration of emergency. After that year, the limitations in subparagraph 2. apply.
2. Twenty percent of the amount of insurance claim payments made by the insurer for claims that are not based on events that are the subject of a declaration of a state of emergency by the Governor.
(c) Any maneuver, shift, or device through which the limits on compensation set forth in this subsection are exceeded is a violation of this chapter punishable as provided under s. 626.8698 .
(Emphasis provided).
Citizens also contends that the Assignments to Gables Recovery were voidable because of their alleged violation of an administrative rule promulgated and enforced by the Division of Insurance Agents and Agency Services (a division within the Department of Financial Services), *633 Rule 69B-220.201, Florida Administrative Code. The rule applies to "all types and classes of insurance adjusters," sets forth a code of ethics applicable to adjusters (including public adjusters), and specifies in subsection (2)(a) that, "Violation of any provision of this rule shall constitute grounds for administrative action against the licensee ." (Emphasis provided).
C. Citizens' Erroneous Contentions
Citizens prevailed based on several erroneous assumptions and legal arguments:
• Citizens has ignored the contractual limits on public adjuster compensation set forth in the Professional Services Agreements between Gables Recovery and the insureds in both cases: 20%, in the case of Mrs. Matusow (agreement of December 16, 2013), and 10% in the case of Mr. Difilippi (agreement of June 13, 2013). Citizens has neither argued nor established that those public adjuster agreements violated section 626.854, either as to form or as to compensation actually paid.
• The Assignments[11] subsequently executed by the insureds to Gables Recovery (March 21, 2014, in the case of Mrs. Matusow, and January 14, 2014, in the case of Mr. Difilippi) assigned "any and all insurance rights, benefits, proceeds and any causes of action" to Gables Recovery, but with limitations established in the record in each case. First, the Assignments were limited to the loss, property, and Citizens policy identified in each Assignments. Second, they were expressly in consideration of "[Gables Recovery's] agreement to perform professional services," a reference to the companion, three-page Professional Service Agreements (signed by the insureds and Gables Recovery on the same date as their respective Assignments) limiting compensation to the statutory percentages and requiring Gables Recovery's "compliance with all applicable Federal, State and Local laws." (Emphasis provided). In short, Gables Recovery was not entitled to retain 100% of the insureds' assigned claims, as argued by Citizens; Gables Recovery agreed in writing with its insureds to limit its compensation to the allowed percentages.
• Citizens did not pay the claims, so of course it did not demonstrate any actual compensation paid to Gables Recovery in violation of section 626.854.
• The Professional Services Agreement provisions pertaining to attorney's fees and "[c]laims handled by in house counsel for legal actions by Gables [Recovery]" are not prohibited by section 626.854. Indeed, any legal services provided by Gables Recovery's staff attorneys licensed by The Florida Bar and in good standing are expressly exempted from the provisions of section 626.854 by virtue of sections 626.854(1) and 626.860.[12]
*634 • The statutes in question do not preclude a single company from employing a licensed individual as a public adjuster and another individual as a licensed attorney in good standing with The Florida Bar.[13] If the Legislature intended to enact such a prohibition, it needed to say it.[14] What the Legislature did say, repeatedly, was that licensed attorneys in good standing with The Florida Bar do not fall within the definition of a "public adjuster" and are exempted from licensure under the insurance code statutes. The record before us contains no evidence that a licensed individual public adjuster with Gables Recovery gave legal advice in contravention of section 626.854(3), nor any evidence that any licensed public adjuster employed by Gables Recovery engaged in a "maneuver, shift, or device through which the limits on compensation set forth in [ section 626.854(11)(d) ] are exceeded."[15]
• The definition of "public adjuster" in section 626.854(1) applies to persons or entities "negotiating for or effecting the settlement" of an insurance claim; it does not address the point at which the claim becomes a lawsuit (as here, when Gables Recovery's counsel commenced the underlying lawsuits). Seeking a judgment for money damages in a court is something beyond an attempt to obtain the "settlement" of a claim. Gables Recovery could not "file a claim in court" without reliance on a licensed attorney exempt from the statute.
Turning finally to Citizens' remaining arguments, there is the obvious point that Citizens has raised these arguments as part of its affirmative defenses against claims that Citizens breached its insurance policies. The record is devoid of any support for those defenses by the Department of Financial Services, The Florida Bar, Mrs. Matusow, or Mr. Difilippi, who are the pertinent regulatory authorities and contracting parties. When the Legislature has intended to invalidate (and render entirely unenforceable) contracts between private, consenting parties for the protection of the public, it has been quite clear. See, e.g., §§ 489.128, .532, Fla. Stat. (2017) (entitled "Contracts entered into by unlicensed contractors unenforceable"); §§ 686.415 and .612, Fla. Stat. (2017) (specifically declaring unenforceable various sales, distribution, and franchise relationships); § 687.071(7), Fla. Stat. (2017) (specifically declaring unenforceable extensions of credit in excess of certain usury and loansharking limits).
Citizens' reliance on the 1933 Florida Supreme Court case of Town of Boca Raton v. Raulerson, 108 Fla. 376, 146 So. 576, 577 (1933), for the "undoubted rule" ("where a statute pronounces a penalty for an act, a contract founded upon such act is *635 void, although the statute does not pronounce it void or expressly prohibit it"), is misplaced. That case involved a land sales fraud by a municipal commissioner in a transaction with the very municipal government of which he was a part, yielding him a substantial profit initially hidden but later discovered. In the present cases, I reiterate that neither Citizens nor the insureds have paid Gables Recovery any amount relating to the assigned claims in either case so far as the records disclose. Any suggestion to the contrary is speculative and not based on the records before us.
C. The Majority's Contract Invalidation Cases
Arguing for a rule of peremptory invalidation where the Legislature enacted no such provision, Citizens' "undoubted rule" discussed above is supplemented by the majority's reliance on several readily-distinguishable appellate decisions. The first point of distinction, of course, is that the Legislature specified the form of discipline to which an errant public adjuster would be subject- section 626.8698, addressed earlier in this dissent-while no such legislative guidance applied to the contractual provisions in the cases cited by the majority.
Addressing the majority's citations individually, Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industry of United States & Canada v. Henley & Beckwith, Inc., 66 So.2d 818, 821 (Fla. 1953), declared unenforceable a "closed shop" agreement between a plumbing contractor and a labor union. The closed shop provision violated section 12 of the Declaration of Rights of the Florida Constitution (Florida's right to work provision, now Art. I, § 6, Fla. Const.), and the contract had no savings or severance provision. In the cases at hand, the contracts do not violate the Florida Constitution or other statute, and they do contain a savings provision (agreeing to compliance with "all applicable Federal, State, and Local laws").
The two attorney's fee contract cases relied upon by the majority are also inapposite. King v. Young, Berkman, Berman & Karpf, P.A., 709 So.2d 572 (Fla. 3d DCA 1998), invalidated an "unenforceable contingency provision" prohibited by the Florida Supreme Court's Rule 4-1.5(f)(3) of the Rules Regulating the Florida Bar. The Legislature does not regulate attorneys and the compensation payable to them, and in the present case the Legislature specified other discipline for errant public adjusters. The decision in King also went on to allow the law firm to retain fees it had already been paid, despite the Rule-violating provision in the attorney-client contract: "When a fee agreement between attorney and client fails to comply with the Rules Regulating the Florida Bar, the attorney is entitled to recover on the basis of quantum meruit." Id. at 574. In contrast, the majority would allow no such payment or computation to Gables Recovery's public adjusters.
Similarly, Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A., 483 So.2d 775 (Fla. 3d DCA 1986), involved a law firm's violation of anti-solicitation statutes making the contract "unlawful" and making the procurement of the contract a crime under both statutes.[16] The Legislature did not make a public adjuster's violation of section 626.854 a crime; the Legislature specified disciplinary guidelines in section 626.8698 that included a fine and the suspension or revocation of *636 the adjuster's license rather than criminal penalties.
The final case cited by the majority for the invalidation of a private contract on public policy grounds is Palm Bay Towers Corp. v. Brooks, 466 So.2d 1071 (Fla. 3d DCA 1984) (en banc). In that case, a condominium developer filed a declaration of condominium claiming to exempt the developer from paying assessments on units owned by the developer, a direct violation of what were then the condominium law, sections 711.14 and .15, Florida Statutes (1971). Brooks v. Palm Bay Towers Condominium Ass'n, Inc., 375 So.2d 348 (Fla. 3d DCA 1979). In the subsequent en banc decision following a later judgment in the same circuit court case, this Court noted "the general rule concerning the invalidity of a private agreement which contravenes a governing statute," citing Local No. 234, the Florida Supreme Court's 1953 "closed shop" case discussed above. Brooks, 466 So.2d at 1074.
Much more recently, however, the Florida Supreme Court has reaffirmed a rule of restraint and caution in invalidating private contracts on grounds of public policy, observing that "there is also a strong public policy favoring freedom of contract." City of Largo v. AHF-Bay Fund, LLC, 215 So.3d 10, 16 (Fla. 2017) :
Courts typically do not strike down a contract, or any portion of a contract, based on public policy grounds except in extreme circumstances:
Courts ... should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris. [ Fla. Windstorm Underwriting v. Gajwani, 934 So.2d 501, 507 (Fla. 3d DCA 2005), quoting Banfield v. Louis, 589 So.2d 441, 446-47 (Fla. 4th DCA 1991) ].
The majority's invalidation of the private contracts in these cases evidences no such restraint, and I must therefore dissent from its affirmance of the summary judgment in Mrs. Matusow's case.
III. Conclusion
Citizens' affirmative defenses alleging that the Assignments are void are not supported by the statutes and administrative rules regulating public adjusters, the language of the companion Professional Services Agreements, the exclusion of attorney's services (and thus attorney compensation) from public adjuster regulation, or the record considered by the trial court in either case. Neither theory supports the summary judgments and final judgments entered in the cases.
For these reasons, I respectfully dissent in Case No. 3D15-2320 (Mrs. Matusow's assigned claim, in which I would reverse the final summary judgment), and I concur separately regarding the majority's decision to reverse and remand the final summary judgment in Case No. 3D16-87 (Mr. Difilippi's assigned claim).

The legislature, in 2017, amended section 626.854, Ch. 17-147, § 2, Laws of Fla., but while the amendments do not affect our analysis, subsection (11)(b) has been renumbered to (10)(b). We cite to the 2014 version of section 626.854 throughout this opinion.

Citizens argues that the Matusow and Difilippi agreements violated the following statutes and administrative regulations:
• "A public adjuster may not restrict or prevent an insurer from interacting with its insured."
• "A public adjuster is required to abide by the rules of the Department of Financial Services ... including ... Fla. Admin. Code R. 69B-220.051 (2006) - Conduct of Public Adjusters and Public Adjuster Apprentices; and ... Fla. Admin Code R. 69200.201 (2011) - Ethical Requirements for All Adjusters and Public Adjuster Apprentices."
• "A public adjuster is required to comply with the ethical requirements established by the Department."
• "A public adjuster is prohibited from engaging in activities that could be construed as a conflict of interest."
• "A public adjuster is prohibited from having any financial interest in any business entity that obtains business relating to a claim the adjuster already has a contract to adjust."
• "A public adjuster is prohibited from using alternative contracts to work around the compensation limits set-forth by the legislature."
• "Prohibiting a public adjuster from settling a claim without the insured's approval."
• "A public adjuster must put the 'duty for fair and honest treatment' of an insured ahead of the 'adjuster's own interests in every instance.' "
• "The public adjuster is prohibited from steering or referring 'any claimant needing ... other services in connection with a loss to any person with whom the adjuster has an undisclosed financial interest ...."
• "The public adjuster is not to take action that is prejudicial to an insured."
• "The public adjuster is not to receive a fee except that which he is legally entitled to receive."
• "The public adjuster is required to inform the insured of their rights under the policy and law; but must also be careful to not 'engage in the unlicensed practice of law as prescribed by the Florida Bar.' "
• "The public adjuster is required to advise the insured of their right to counsel and to their sole right to select counsel to represent them."
• "The public adjuster is not permitted to impede an insured from speaking 'privately with the insurer ... regarding the settlement of [their] claim.' "
• "The public adjuster's interactions with others relating to business referrals and payment of any compensation is restricted."
• "The public adjuster is barred from impeding an insurer's access to their insured."
• "The public adjuster's contract does not comply [with] Fla. Admin. Code R. 69B-220.051(6)(b)2, because it does not identify the adjuster's license number."

The dissenting opinion suggests that the public adjuster statute, section 626.854, is unclear and ambiguous. The Florida Supreme Court, we, and others have had no trouble applying the statute's plain meaning. See Atwater v. Kortum, 95 So.3d 85, 90 (Fla. 2012) ("In the instant case, we agree with the First District that the plain language of section 626.854(6) 'prohibits all public adjuster-initiated contact, whether electronic, written or oral' and that the Department's interpretation of the statute is untenable because it requires 'the court to eliminate the "initiate contact" prohibition inserted by the legislature.' (quoting Kortum v. Sink, 54 So.3d 1012, 1018 (Fla. 1st DCA 2010) ) ). Indeed, we have applied the plain language of the twenty percent cap statute, section 626.854(11)(b). See Sink v. E. Coast Pub. Adjusters, Inc., 40 So.3d 910, 914 (Fla. 3d DCA 2010) ("Based upon the plain language of this section, fraudulent and excessive claims, such as those purportedly being investigated by Cashier, are outside of the scope of section 626.854(11)(b)(2), and the Adjusters' attempt to attack and forestall these investigations by challenging the constitutionality of sections 626.854(6) and 626.854(11)(b)(2) is misplaced.").

Importantly, the successor law firm, like Citizens, was not a party to the contract between Gerson and the client, yet based on the successor law firm's defense that the contract violated the state solicitation statute, we found the contract void and unenforceable.

We note, as the majority did in footnote 1 of its opinion, that this subsection of the statute was renumbered to (10)(b) from (11)(b) in 2017.

We align with our sibling courts on that question; see Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co., 185 So.3d 638 (Fla. 2d DCA 2016), and One Call Prop. Servs., Inc. v. Sec. First Ins. Co., 165 So.3d 749 (Fla. 4th DCA 2015).

The significance of this exception for claim payments made by an insurer for losses for events subject to a declaration of a state of emergency by the Governor is that the compensation of a public adjuster for such claims is limited by statute to ten percent rather than the twenty percent limitation applicable to other claims. § 626.854(11)(b), Fla. Stat. (2014).

On this record, licensed attorney Robert Pelier signed the complaint as general counsel of Gables Recovery, and private counsel unaffiliated with Gables Recovery filed and served other pleadings on behalf of Gables Recovery. An attorney's fee application would be made by, and payable to, the attorneys and not to non-attorney adjusters. See R. Regulating Fla. Bar 4-5.4 ; Fla. Patient's Comp. Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

As indicated in note 3, ten percent is the maximum amount of insurance claim payments that may be collected by a public adjuster, as in Mr. Difilippi's case, when the claim is based on events that are the subject of a declaration of a state of emergency by the Governor.

Public adjusters must be a "natural person at least 18 years of age," and are licensed and regulated by Florida's Department of Financial Services. The qualifications for such a license are detailed in section 626.865, Florida Statutes (2017).

Citizens now properly concedes that the insureds could assign their post-loss insurance claims and proceeds without Citizens' consent. Citizens Prop. Ins. Corp. v. Ifergane, 114 So.3d 190, 195 (Fla. 3d DCA 2012).

Moreover, if Gables Recovery is ultimately successful in obtaining a recovery from Citizens (something that has not occurred in this record), Citizens can then raise its argument that Gables Recovery's in-house attorney's claim for attorney's fees and costs under section 627.428 is excess compensation which may not be recovered as a result of the statutory limitation in section 626.854(11)(b).

The Rules Regulating the Florida Bar may, of course, affect what an attorney employed by Gables Recovery can and cannot do regarding attorney's fee recoveries and other matters. No such issues are presented on the record before us in these cases.

"Our role is to apply this law as it is written, and not to write-in requirements that are not there or to fix holes that are." Leon v. Carollo, 246 So.3d 490, 491 (Fla. 3d DCA 2018).

If Gables Recovery (acting as a public adjuster) was alleged to have exceeded the limits on compensation through such a "maneuver, shift, or device," that violation would be punishable by the Department of Financial Services, with fines or the denial, suspension, or revocation of the public adjuster's license as specified in section 626.8698, Florida Statutes (2017).

Sections 877.02, "Solicitation of legal services or retainers therefor; penalty," and 817.234, "False and fraudulent insurance claims," Florida Statutes (1981).